Walter A. YOUNGE, M.D., Appellant,

v.

**STATE BOARD OF REGISTRATION FOR
the HEALING ARTS, Respondent.**

No. 54160.

Supreme Court of Missouri,
Division No. 1.

July 14, 1969.

Certiorari Denied Feb. 24, 1970.
See 90 S.Ct. 910.

Morris A. Shenker, Cordell Siegel, Murry L. Randall, St. Louis, for plaintiff-appellant.

John C. Danforth, Atty. Gen., Jefferson City, Albert J. Stephan, Jr., St. Louis, for respondent.

EAGER, Special Commissioner.

This is an appeal from an order of the Circuit Court affirming, on petition for review, an order of the State Board of Registration for the Healing Arts revoking appellant's license to practice the healing arts. We note here, however, that the Board's order gave him leave to apply for reinstatement after a period of six months. We shall reserve a statement of the facts for our consideration of appellant's point on the supposed insufficiency of the evidence. We state here, however, enough of the circumstances for a consideration of his first two points.

A complaint was filed on April 21, 1966 by the Respondent Board charging that appellant on February 11, 1966, performed an unlawful abortion on one Margaret Ann Pyles in violation of § 334.100, subd. 1(3) [1]; it asked that service be had, a hearing held, and that the Administrative Hearing Commission transmit its findings of fact and conclusions of law (See §§ 161.252—161.342, 1967 Cum.Supp.). The appellant answered denying the allegations. Thereafter, appellant having been indicted in the City of St. Louis for the criminal offense of abortion, was acquitted after trial by a jury. Following that acquittal he moved to dismiss the present complaint on the grounds of res adjudicata and collateral estoppel. The motion was overruled by the Hearing Commissioner after consideration of memorandum briefs.

The petition for review filed in the circuit court on November 17, 1967, asserts that the findings, conclusions, decision and order are erroneous, because: (1) they are in violation of the double jeopardy provisions of both the state and federal constitutions (citing appropriate articles and sections) and of due process; (2) that appellant's acquittal in the criminal case was a bar to the present proceedings under the principle of res adjudicata and collateral estoppel; and (3) that the findings were not supported by competent and substantial evidence upon the whole record. The same three points are now raised in appellant's brief here and we shall not need to restate them as such. Upon the filing of the petition the circuit court stayed the order of revocation. When it later affirmed, that order was vacated. When the appeal was lodged here we entered an order again staying the revocation until the further order of this court.

Respondent Board has also filed a motion for the transfer of the case to the St. Louis Court of Appeals on the ground that the supposed constitutional question or questions are not substantial, but merely colorable. We hold first that the state is not a party and that we do not have jurisdiction on that ground. Gaddy v. State Board of Registration, Mo., 394 S.W.2d 284. We must still determine, however, whether there is substance to the contention of double jeopardy. Respondent says there is

---

[1]. The correct name is Pyle, but no point is made on this.

none, because the present proceedings are administrative and do not constitute a criminal case within the constitutional prohibitions. Noting that we have been required to spend at least two days in examining the authorities before deciding the question, we find that the contention of constitutional construction is not merely colorable, and that we have jurisdiction. The motion to transfer is overruled. We have concluded, however, that the appellant *has not* by the present proceedings been put "again in jeopardy" for the same offense (Art. 1, § 19 Const. Mo., V.A.M.S.) nor has he been "twice put in jeopardy" for the same offense. (5th Am. U.S. Const.) It will be impossible to discuss all of the cases cited. Appellant has cited 51 cases and 4 miscellaneous authorities on this point alone. While perhaps we are only obligated by Rule 83.05 to examine the first three, we have chosen to examine most of the others. We see no justification for such a multitudinous citation of authorities, and we do not feel that the practice is within the spirit of our rules.

Appellant seemingly relies primarily upon his stated proposition that the double jeopardy clauses (and we need not distinguish here between the state and federal) bar a subsequent civil action seeking to impose "punitive sanctions" after the defendant has been acquitted in a criminal trial. His leading authority seems to be the case of United States v. Chouteau, 102 U.S. 603, 26 L.Ed. 246. There a distiller had been indicted for illegal diversion of liquor without payment of the tax; he effected a compromise with the government, paid the agreed amount, and the indictments were dismissed. The statute, R.S.1878, § 3296, imposed a fine, imprisonment and a "penalty of double the tax imposed * * *" for any violation. The government then sued him and his sureties on his distiller's bond for the penalties provided in the statutes (presumably the double tax) and he pleaded the compromise in bar. The court held that a recovery of the penalty was made a part of the "punishment" for the offense and that it could have been enforced (like the fine and imprisonment) by a criminal prosecution, had the government so chosen; that this was demonstrated by the fact that anyone who "aided or abetted" was likewise made liable for the penalty, though not otherwise interested in the property. So holding, the court further held that the compromise of the criminal cases covered all the penalties and all "punishment" for the acts in question. We regard the case as not persuasive on our facts. The same is true (on rather similar facts) of United States v. La Franca, 282 U.S. 568, 51 S.Ct. 278, 75 L.Ed. 551, and United States v. Glidden Co. (CA6) 78 F.2d 639, also cited. The cases of United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443, and Murphy v. United States, 272 U.S. 630, 47 S.Ct. 218, 71 L.Ed. 446, also cited, seem to us to be more adverse to appellant's position than favorable. It is impossible, within any reasonable space, to discuss all such cases. The case of Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644, held that a statute depriving one of citizenship, without notice or hearing, for leaving or remaining outside the United States for the purpose of evading military service, violated due process; the court spoke of the imposition as a "punishment," but we do not consider the case applicable on our facts. It did not concern double jeopardy.

In Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917, cited by respondent, it was held that an acquittal in an income tax evasion trial did not bar a subsequent suit for a 50% additional assessment imposed and assessed under the statute. The court noted the difference in the degrees of proof required in the criminal and civil cases, and also noted that the requirement of the additional assessment should be considered as remedial in nature, and *not* a punishment. The court discussed and gave illustrations of various "remedial" sanctions, (including that of disbarment) and held generally that the constitutional guarantees of criminal prosecutions did not apply to actions or administrative proceedings of such nature. The opinion is a very effective an-

swer to the federal cases cited by appellant, and we shall not elaborate upon them further.

■ Insofar as the Missouri authorities are concerned, appellant relies chiefly on State ex rel. Spriggs v. Robinson, 253 Mo. 271, 161 S.W. 1169, and State ex rel. Johnson v. Clark, 288 Mo. 659, 232 S.W. 1031. It was stated in Spriggs that the then-existing statute providing for the revocation of the licenses of physicians was penal in nature and was to be construed liberally in favor of the physician, because it deprived one of a "valuable privilege." In Johnson, supra, the statement in Spriggs was merely repeated with reference to the admissibility of certain evidence. Counsel would use these cases as authority to the effect that our present statute is penal, that revocation is therefore a punishment, and that this proceeding subjects appellant to a second trial for the same "offense." Insofar as Spriggs and Johnson held the statute to be penal, they have been overruled. Hughes v. State Board of Health, 348 Mo. 1236, 159 S.W.2d 277; Gaddy v. State Board of Registration, Mo.App., 397 S.W.2d 347; Bittiker v. State Board of Registration, Mo.App., 404 S.W.2d 402; State ex rel. Lentine v. State Board of Health, 334 Mo. 220, 65 S.W.2d 943. In Hughes, the court directly held that (in this respect) the Spriggs case had been overruled, that the statute was one "for the protection of the public in safeguarding public health," and that it was not an imposition of punishment. Counsel for appellant seems to doubt the effect of these later decisions. If any doubt remains, and there should be none, we now hold that our revocation statute is *not* penal in nature and we reaffirm the later doctrine as just stated. In this view, it is wholly unnecessary to consider the many authorities cited from other states for our own policy is established. These revocation proceedings are not penal, they are not "quasi-criminal," they do not contemplate "punitive" sanctions and the provisions against double jeopardy do not apply. The appellant is not being tried again for the same "offense." He is not, in fact, being tried for any offense.

■ Appellant next contends that the judgment of acquittal in the criminal case was res adjudicata or, in the alternative, that it constituted a collateral estoppel. The terms are used more or less interchangeably here and we shall consider the single principle. Before proceeding further we note the requirements as generally recognized, as follows: there must be identity of the persons and parties, identity of the cause of action, identity of the thing sued for, and identity of the quality of the person for or against whom the claim is made. Prentzler v. Schneider, Mo. Banc, 411 S.W.2d 135; State ex rel. Dalton v. Reorg. Dist. No. 11, Mo. Banc, 307 S.W.2d 501. The principle may be applicable to a material fact litigated in the prior proceeding, subject to the same requirements. In that event it is more properly described, perhaps, as a collateral estoppel. The acquittal in the criminal proceeding determined that the state had not established beyond a reasonable doubt that this appellant was guilty. In State ex rel. Hurwitz v. North, 304 Mo. 607, 264 S.W. 678, aff. 271 U.S. 40, 46 S.Ct. 384, 70 L.Ed. 818, the court held that there was no reason for postponing the hearing in a revocation proceeding until after a criminal prosecution (for an abortion) was terminated. This would certainly indicate that the court felt that the two proceedings were wholly independent and unrelated. In Lewis v. Frick, 233 U.S. 291, 34 S.Ct. 488, 58 L.Ed. 967, the distinctions between "a criminal prosecution and an administrative inquiry" were discussed in detail and recognized, and the court held that an acquittal in criminal proceedings for unlawfully importing a woman into the United States for prostitution was not res adjudicata in subsequent proceedings for deportation of the defendant for the same act. See also Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917, cited supra, which ruled against a contention of res adjudicata on its facts as previously discussed.

In our case of In re Sympson, Mo., 322 S. W.2d 808, the court held that a disbarment proceeding was not maintained for punishment, but for the protection of the public and the bar; and the court further noted there that an acquital upon a criminal charge is not a defense to a disbarment proceeding for the same acts. See also In re Richards, 333 Mo. 907, 63 S.W.2d 672.

Appellant relies strongly on Coffey v. United States, 116 U.S. 436, 6 S.Ct. 437, 29 L.Ed. 684, where the defendant had been acquitted on a criminal charge involving the unlawful withdrawal of liquor without payment of the tax. In a subsequent proceeding in rem for the forfeiture of the property involved, it was held that the acquittal was a bar, because the fact of no statutory violation had been determined there; the court noted that the parties were the same and that the issues were precisely the same, including the element of intent. The case has been rather roundly criticized. United States v. One Dodge Sedan (CA3), 113 F.2d 552, and it has been distinguished in the later case of Helvering v. Mitchell, supra, 303 U.S. at pp. 405–406, 58 S.Ct. 630, as inapplicable when the subsequent proceeding is *administrative* in nature. We do not regard the Coffey case as applicable here. We have considered appellant's other cases and they are not persuasive. Certain of these also involve the forfeiture of property by the government, after the trial of a criminal case; they hold generally that the forfeiture is essentially a criminal proceeding and that it seeks to enforce a part of the punishment provided by the statute, other parts being fine and imprisonment; thus it was held, in some instances, that the result of the original case was res adjudicata. Those cases are not in point here, for in them the parties were identical, the causes of action were held to be the same, and the thing sued for (the punishment, divided into parts) was the same. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; United States v. One De Soto Sedan (D.C.N.C.), 85 F.Supp. 245, aff., 4 Cir., 180 F.2d 583.

■ In this case the parties are not the same; in the criminal case the State of Missouri was the prosecuting party, whereas in the present proceeding the only party adverse to appellant is the Board, which is *not* the State, but a "legal entity in the nature of a quasi public corporation." Gaddy v. State Board of Registration, Mo., 394 S.W.2d 284. The causes of action are not the same; the first was strictly criminal with the aim and purpose of punishment; the present proceeding is administrative in nature, remedial and not penal. For the latter reason the thing sued for was and is not the same in the two proceedings. We have said enough to demonstrate that no determination made in the criminal case can be binding here by way of collateral estoppel or, if preferred, as res adjudicata. The Board was free to pursue its own proceedings independently. The point is denied.

■ The last point of appellant is that the findings, conclusions, decision and order are not supported by competent and substantial evidence upon the whole record, § 536.140, RSMo 1959, V.A.M.S., and that they are contrary to the overwhelming weight of the evidence. The force of this contention was considerably blunted when counsel conceded on page 35 of their brief that " * * * case resolves itself to questions of credibility." In effect they argue that because a jury failed to convict appellant on similar evidence, there can be no substantial evidence to the contrary. This by no means follows. We do not decide credibility here, nor did the circuit court. We find, and hold, that there *was* substantial and competent evidence to support the decision and order, that they were not contrary to the overwhelming weight of the evidence, and that they could reasonably have been made by the Hearing Commission and the Board. Such is the test. Gaddy v. State Board of Registration, Mo.App., 397 S.W.2d 347; Bridges v. State Board of Registration, Mo.App., 419 S.W.2d 278; Rose v. State Board of Registration, Mo., 397 S.W.2d 570.

There was much detailed evidence at the hearing, including certain parts transposed from the criminal trial. We shall not make a detailed statement. The essence of the evidence on behalf of the Board showed the facts which we now state. One Margaret Pyle, 18 years of age, came to Scott Air Force Base (east of St. Louis) as a woman member of the Air Force in August 1965; she soon met Robert Portwood, also a member of the Air Force there, and serving as a dental technician. These two had repeated sexual relations from August or September 1965 for a period of several months. In January 1966, Margaret had no menstrual period and she so told Robert. On Friday evening, February 11, 1966, Robert, Margaret and one Cordie Thomas (also a member of the women's branch of the Air Force) traveled in Robert's car to the appellant's office at 4635 Easton Avenue in St. Louis; Robert waited in the car while the girls went in and stayed for 1 to 1½ hours. Cordie Thomas talked to the receptionist for Margaret, but gave her (Cordie's) name, stating that Margaret had a cold and sore throat; they were taken to appellant and Cordie then told him that they had come to see if Margaret "could get an abortion," but that they only had $70; Margaret then and there gave appellant the $70 and he took it and put it in his pocket; he then put her (Margaret) into an examining room, had her undress and get on a table with her legs raised; only these two were present, and there were a lot of instruments around; he distended her vagina with some instrument and used another one which was shaped like a long pair of scissors up inside her vagina; she felt motion, like he was "cutting"; this went on for "3 or 4 minutes," perhaps; he later placed cotton in her vagina, told her to take it out when she got home, and left her. Margaret recalled no conversation regarding any prescription. She dressed herself and she and Robert stayed at a motel until Sunday, February 13th; the girl began to feel badly during the following week with a vaginal discharge and pains in her stomach or abdomen; her condition continued to deteriorate until Robert (accompanied again by Cordie) took her back to appellant's office on the evening of February 24th; at that time she was assisted into the office; appellant examined her vaginally, catheterized her (because she could not then urinate) and gave her a prescription which was not filled until the next night; she went back to appellant's office the next night because of pain and was again examined with instruments being used in her vagina; he told her to get the prescription filled and that she should go to a hospital; she did get the medicine (through Cordie) and returned to the Base; but on the next evening her condition was so serious that Robert took her to the Base Hospital. She was examined there promptly and the Air Force surgeon found extensive pus, both inside and outside the vaginal canal, a circumferential, old laceration or tear around the upper part of the vagina just below the cervix, a large abscess between the uterus and the rectum, and a highly septic condition. He stated that in his opinion Margaret had had a septic abortion procured by outside intervention; tests then made showed a recent pregnancy; he further testified that any instrument introduced into the uterus, even for a short time, could cause an abortion. The infection was first drained and this was followed very shortly by a complete hysterectomy. This physician saw no burned or necrotic areas in the vaginal canal. The recovery was apparently uneventful; Robert and Margaret were married in March 1966. She testified that she had done nothing to procure an abortion, nor had anyone except appellant inserted any instrument into her; her health was good until February 11, 1966. She had been to no other physician. The foregoing, in our opinion, constitutes competent and substantial evidence upon which the decision and order of the Board might reasonably be made.

Defendant denied all of this substantive testimony, insofar as it concerned the matter of an abortion. He admitted that Margaret was in his office as Cordie Thomas for a cold and sore throat on February 11,

1966, and said that he treated her at that time and telephoned a prescription to his neighborhood drugstore. He further testified: that he examined her again on the evening of February 24, 1966, at which time he found various areas of necrosis inside her vagina, with an odor, temperature and a distended abdomen; that she admitted at that time that she had used a catheter and lysol on herself, and that he promptly told her to get in touch with her mother and enter a hospital; that he then gave her a prescription for an antibiotic. He denied that she returned on February 25th. In other words the appellant has completely denied the acts charged, and places the blame upon Margaret herself; his office girl testified that she was present on both occasions and corroborated appellant in all substantial respects. We need go no further into the many details. As in other cases, there were inconsistencies shown pro and con, and also corroborations. Among the latter was the fact that Margaret could have received free medical attention at her Base Hospital for any legitimate complaint.

Most assuredly, as counsel in effect have conceded, this case turned on the issue of credibility. This girl, very naturally, could not know all that transpired on the evening of February 11th nor could she identify properly the instruments used. The fact is obvious that she was pregnant and that she was aborted; further, she denied that anyone except appellant did anything to procure the abortion. The Hearing Commissioner and the Board have believed the substance of Margaret's testimony; it constituted substantial and competent evidence and it afforded, if believed, an entirely reasonable basis for the decision made. We do not find that the decision was against the overwhelming weight of the evidence. So finding, we shall necessarily affirm.

▮ We note one further matter. Counsel complain that the Commissioner and the Board gave little or no consideration to appellant's "long and honorable record," both in medicine and public service; his accomplishments, it is true, seem to be substantial. His status is not a defense on the merits to such a complaint as this; at best, it could go only to his credibility and to the extent of the discipline. On the first, the Commissioner and the Board have seen fit to disbelieve him and their decision is final. On the second phase, it seems to us that the Board *has* considered his prior standing, in that it granted him leave to apply for reinstatement after six months. That decision also is final.

The judgment is affirmed and we now vacate the order of stay heretofore entered.

PER CURIAM:

The foregoing opinion by EAGER, Special Commissioner, is adopted as the opinion of the Court.

SEILER, P. J., concurs.

STORCKMAN, J. and HENLEY, ALT, J., concur.

HOLMAN, J., not sitting when cause was submitted.