**Thomas A. CAMPBELL and Vester Lee Hayes, Appellants,**

v.

**The PERSONNEL BOARD OF KANSAS CITY, Missouri, and Robert A. Kipp, City Manager of Kansas City, Missouri, Respondents.**

**No. WD 34462.**

Missouri Court of Appeals,
Western District.

Jan. 17, 1984.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied Feb. 28, 1984.

Application to Transfer Denied April 16, 1984.

James R. Anderson, Kansas City, for appellants.

Richard N. Ward, City Atty. and Dan G. Jackson, III, Asst. City Atty., Kansas City, for respondents.

Craig Becker, Washington, D.C. and Lydia Burns, Kansas City, for amicus curiae.

Before PRITCHARD, P.J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This appeal follows a judgment affirming the decision of the Personnel Board of the City of Kansas City, Missouri, which resulted in the termination of two city employees. The judgment is affirmed.

Appellants present a singular point, which charges that the trial court erred in affirming the prior decision of the Personnel Board of the City of Kansas City, Missouri, because, "The decision of the Personnel Board of Kansas City, Missouri and the decision of the City Manager of Kansas City, Missouri, dated respectively December 23, 1981 and February 2, 1982 upholding the earlier discharge of appellants by the City of Kansas City, Missouri, because they had refused to submit to a polygraphic examination, were arbitrary, capricious, unreasonable, involved an abuse of discretion and were unsupported by competent and substantial evidence upon the whole record."

From the rather short record and documentary evidence submitted to this court, the following applicable facts are to be found.

Appellants (hereinafter referred to as Campbell and Hayes), along with a third employee, were, on August 24, 1981, assigned to Water Department Truck No. 8536 for purposes of job performance with and on behalf of respondent, the City of Kansas City, Missouri (hereinafter referred to as the City). Between the hours of 5:30 and 6:00 p.m. on August 24, 1981, the trio returned the truck to its designated parking area. Although part of their duties included locking the truck, they neglected to do so. A short time later, two other employees, Thatcher and Quinn, assigned to the Store Keeping Section of the City's Water and Pollution Control Department, observed that the truck was unlocked. These two employees took an inventory of the truck and taped the doors shut. The inventory revealed that there was missing a ball-peen hammer, a 60-foot reel of one-inch copper pipe, and a reel of three-quarter-inch copper pipe.

Campbell, Hayes, and the third employee were called before supervisors relative to an investigation concerning the property loss. The third employee agreed to and did take a polygraphic examination. Hayes refused to cooperate in the investigation under the advice of the union, including the refusal to take a polygraphic examination. Initially, Campbell agreed to take such an examination. He appeared for the exami-

nation and advised the examiner that he was suffering from numerous physical ailments.

The City ordered a physical examination for Campbell, upon the completion of which the examining physician could find no medical or physical problems. On his report, the examining physician noted, "I find no reason why he cannot take [a] polygraph test." The record includes testimony of one Harold Schneider, the Assistant Director of the City's Water and Pollution Department. Schneider testified that Hayes and Campbell refused to cooperate in the investigation. He also testified that Campbell admitted to him that his (Campbell's) claims of medical and physical disabilities were false. The net result was that Hayes and Campbell both refused to take the polygraphic examination. Upon cross-examination, Schneider admitted that the extent of cooperation in such an investigation is measured by the willingness or refusal to take a polygraphic examination.

The Personnel Board decided that Campbell and Hayes had refused to cooperate in a lawful investigation and affirmed their termination of employment. This action was followed by a like decision by the City Manager. Appellants filed their petition for review in the circuit court. Without a hearing, the circuit court affirmed the previous decisions. This appeal followed.

Reduced to its simplest form, appellants' contention on appeal is that they were terminated "solely and singularly" because they refused to submit to polygraphic examinations and not because of any alleged "failure to cooperate in a lawful investigation" as contended by the City. Thus, appellants make it absolutely clear that their attack is upon the use of polygraphic examinations by the City. The City meanwhile expressed, through counsel, that appellants refused to cooperate. Neither party offered up any evidence of any other activity concerning Campbell and Hayes relative to the investigation. Stated another way, the City offered no evidence other than the refusal to take the polygraphic examination to show a lack of cooperation. On the same note, Campbell and Hayes offered no evidence revealing any cooperation in the investigation. Thus, on this appeal, we have appellants directly challenging the City's right to use polygraphic examinations, contending that it has no such right, and concluding therefrom that the City failed to prove a lack of cooperation. In contrast, we have the City maintaining its right to make use of polygraphic examinations, and upon the refusal of Campbell and Hayes to take such examination, the City's conclusion that Campbell and Hayes refused to cooperate in a lawful investigation.

Appellants would have this court rule that the use of polygraphic examinations are not permissible, and thus it could not follow that Campbell and Hayes refused to cooperate. In order to persuade this court to reach the conclusion suggested by appellants, they cite State v. Biddle, 599 S.W.2d 182 (Mo. banc 1980). From Biddle, appellants broaden their assertion by urging that the rule in Biddle is applicable to the instant proceedings in multiple fashion. First, it is suggested that Biddle, because of the doctrines of res judicata, collateral estoppel, and stare decisis, prohibits the use of polygraphs. It is then suggested that since Biddle prohibits the admission of polygraphic examination or test results in criminal cases, whether agreed to or not, that such tests are also not admissible in all other proceedings, including administrative hearings. It is then suggested that since the prohibitory rule in Biddle is applicable to administrative proceedings, appellants cannot have been properly discharged because to have agreed to the examination would have been a useless act which they were not required to perform.

Biddle was a split en banc decision of the Missouri Supreme Court, in which it was ruled that the results of polygraphic examinations, whether agreed to or not between the prosecution and the accused, are not admissible in criminal proceedings. What appellants seek in the instant proceedings is an interpretation of Biddle to include a prohibition of the use of polygraphic examinations in any and all proceedings and at

*any* and *all* phases of any proceeding, whether at the investigatory level or at the hearing level.

While the rule announced in *Biddle* includes the condemnation of the use and results of polygraphic examination, it does so on the premise that the scientific reliability thereof goes wanting to the extent that such examination or test results are not acceptable or properly admissible evidence in a criminal trial. *Biddle* does not address or rule the issue or question of whether such examinations are a permissible investigatory method, and that case certainly does not address the question presented herein as to whether anyone [i.e., employers, governmental agency, etc.] has the right to utilize or employ the use of such examinations in the course of an investigation or for other purposes relative to an employee. The net result is that *Biddle* does not control the instant case.

In addition to appellant's position, this court has been presented a brief Amicus Curiae by the American Federation of State, County, and Municipal Employees, AFL–CIO. In that brief are references to foreign jurisdictions, noting the limitations placed upon the use of such examinations and in some cases, the absolute prohibition of their use in employment related matters.

Returning briefly to appellants' above assertions, this court finds appellants' contention that the doctrines of res judicata, collateral estoppel, and stare decisis are applicable is meritless.

In a somewhat analogous case, appellants' contention on this point was directly rejected. *Younge v. State Board of Registration for Healing Arts,* 451 S.W.2d 346 (Mo.1969), cert. denied 397 U.S. 922 (1970). In *Younge,* a physician attempted to persuade the Missouri Supreme Court to rule that his previous acquittal of a charge of criminal abortion was a bar to subsequent proceedings involving the revocation of his state license to practice medicine. That case notes the reasons set forth as to why the proposed doctrines are not applicable. It is not necessary to restate those varied reasons herein, as a reading of the *Younge*

decision will furnish those reason. It suffices to conclude herein that the rule in *Younge* completely dispels appellant's contentions herein.

Proceeding to consider appellant's second contention that *Biddle* prohibits the use of polygraphic examination or test results in *all* or any proceedings, this court cannot agree. *Biddle* does not rule any prohibition against the use of such examination or the results of such examination in even a criminal proceeding. The *Biddle* rule simply states that the examination or test results are *not admissible* in a criminal trial and the inadmissibility *cannot* be waived by agreement or stipulation of the parties regarding such test results. Thus, appellant's assertion in this regard is meritless.

Turning to appellants' further assertion that *Biddle* prohibits the use of such examinations at *any* level or phase of an investigation or other use relative to employment is likewise meritless. It follows that if *Biddle* does not prohibit the use of such examinations other than the results are held to be inadmissible in a criminal trial, which it does, then appellants' assertion that the *Biddle* rule prohibits the use of such examinations across the board is likewise meritless. The same can be said of appellant's assertion that to have submitted to a polygraphic examination, in light of *Biddle,* would have been a useless act and hence appellants were wrongfully discharged. *Biddle* does not address or rule the use of such examinations, except to the extent that such test results are not admissible as evidence in a criminal trial.

A case which most closely resembles the instant case is *State ex rel. Bernsen v. City of Florissant,* 641 S.W.2d 477 (Mo. App.1982). In *Bernsen,* a local police officer challenged his discharge from employment. The officer had been accused by two female prisoners with soliciting sexual favors. The officer was directly ordered by the Chief of Police to submit to a polygraph examination. Upon his refusal, the officer was terminated. The first appeal in *Bernsen* resulted in a reversal because of the failure to provide the officer with cer-

tain due process safeguards. On a rehearing, his discharge was again ordered. On the second appeal, the Missouri Court of Appeals affirmed the officer's discharge upon his failure to obey a direct order. As related to the instant case, the court in *Bernsen* noted at 480:

> "Although the results of a polygraph are inadmissible in court (*State v. Biddle*, 599 S.W.2d 182 (Mo. banc 1980)[1]), use of a polygraph for investigative purposes and (because of public acceptance) as a means of clearing the reputation of the police after a charge of misconduct, has been recognized by the courts, *Coursey v. Board of Fire and Police Commissioners*, 90 Ill.App.2d 31, 234 N.E.2d 339 (1967)[5]; *Leeks v. State*, 95 Okl.Cr.App. 326, 245 P.2d 764 (1952)[14–16]."

Appellants attack *Bernsen* by suggesting the uniqueness of *Bernsen* having to do with a police officer. They further direct this court's attention to recent legislation enacted by the 82nd Missouri General Assembly. The bill was HB–292. What appellants fail to note for this court, but what research by this court reveals, is that HB–292 was vetoed by the Governor on July 28, 1983. There is no record of either the Missouri Senate or House of Representatives having taken up the veto in an attempt to override the veto. To be sure, the "carry over procedure" of the Missouri General Assembly may permit consideration of that veto in September, 1984. There is no way for this court to speculate if the Missouri General Assembly would even consider such action, let alone speculate further if the veto would be overriden. The simple result and conclusion is that the above-referred-to Act has no force of law and hence, in no way is applicable to the instant proceeding. While appellants urge this court to recognize the legislative intent within the above Act and its application to the instant case, this court is not in a position to interpret or provide construction of a non-existing statute. It is further noted after a review of that Act that appellants' suggested interpretation of the legislative intent within that proposed legislation could be seriously erroneous, particularly as to appellants' urging the application of that proposed Act to everyone and not acknowledging possible application only to peace officers, and appellants' obvious refusal to recognize the limited situations and conditions which the Act addressed.

Appellants also note that in January, 1981, there was an ordinance introduced which would have repealed Section A 7.4 of the City's Administrative Code (i.e., this provision provides in part that a city employee may, as a condition to continued employment, be required to submit to a physiological or psychological truth/deception test). Appellants concede that the proposed ordinance was defeated by action of the City Administration. Hence, this court is not in any position to review, let alone interpret, a non-existing ordinance. Once again, appellants urge this court to recognize the "intent" expressed by such an ordinance and action taken in the introduction. The rationale and conclusion expressed by this court regarding the proposed HB–292 finds equal application to the ordinance referenced by appellants.

In summary then, this court concludes and finds the following. Contrary to appellant's assertion that the sole and exclusive reason for their discharge was their refusal to submit to a polygraphic examination, coupled with their further assertion that *Biddle* controls and thus determines their discharge was wrongful, this court concludes that is not of any material significance. The real issue is whether respondent City, by the ruling in *Biddle* or other authority, is prohibited from requiring or employing the use of polygraphic examinations in the course of a lawful investigation related to the business of the City. As noted above, *Biddle* does not prescribe such a prohibition. Under the particular facts and circumstances of the instant case, this court is not required or even permitted to rule whether such examination or test results would be or are admissible in administrative proceedings. That question is not before this court and the most which can be said on that point is that *Biddle* is applicable only to the inadmissibility of

such examination or test results in criminal proceedings.

What the present case presents is the challenge by appellants to the use of polygraphic examination in the course of a lawful investigation of a loss of property and the refusal of two employees to submit to such an examination followed by the decision of the City that such refusal was a refusal or failure to cooperate in that investigation. Appellants' attempt to extend this matter beyond that point is without merit.

This court rejects appellants' assertion that the rule in *Bernsen* has application only to police officers. The rationale of the rule in *Bernsen* is that while the test results of polygraphic examinations are inadmissible in criminal trial proceedings (*Biddle*), the requirement to submit to such examinations and the use of such techniques in lawful investigations is not prohibited. The same thinking (i.e., the "clearing of the reputation" or the exoneration of a police officer) expressed in *Bernsen* has equal application to the two appellant employees herein. This court, under the particular facts and circumstances herein, adopts the rule in *Bernsen* and concludes that it is controlling and dispositive of the instant proceedings.

There was no error in the decision of the Personnel Board in ordering the termination of the employment of appellants. There was no error in the affirmation of that ruling by the City Manager of the City of Kansas City, Missouri and/or the circuit court. The evidence was competent and substantial to support the Board's order.

Judgment affirmed.

All concur.