Anthony S. CITRO, Appellant,

v.

CITY OF LEE'S SUMMIT and Personnel Hearing Board of the City of Lee's Summit, Missouri, Respondents.

No. WD 33573.

Missouri Court of Appeals, Western District.

Sept. 13, 1983.

George E. Kapke, Cochran, Kramer, Kapke & Willerth, Independence, for appellant.

Stanley E. Craven, William C. Martucci, Kansas City, for respondents.

Before SOMERVILLE, C.J., and SHANGLER and PRITCHARD, JJ.

SHANGLER, Judge.

The appellant Citro, a Lee's Summit police officer, appeals from a judgment of the circuit court to affirm the decision of the Personnel Hearing Board to uphold two five-day suspensions administered by the Chief of Police.

These disciplines were sequels to a collision between the official car driven by Citro, lights and siren on, then enroute to investigate an accident scene, and the vehicle of Mary Sue Diekmann. Immediately prior to collision, Ms. Diekmann moved her car to the shoulder to allow a fire truck—with lights flashing and siren sounding—to pass from behind. The collision between Citro and Diekmann was investigated by officer Oakley of the Lee's Summit Police Department. At the scene, Ms. Diekmann stated to Oakley that Citro struck her as she changed lanes. Citro made the same statement. Later that day, Ms. Diekmann telephoned Oakley to correct her earlier statement—that she was not struck as she changed lanes but as she pulled onto the shoulder of the road. Oakley prepared both the original report and a supplement to include the Diekmann change of narrative.

In the evening, two days later, Citro telephoned Oakley at home after hours to discuss the investigation and report of accident. The purpose was to vent displeasure at the investigative report filed by Oakley, and the tenor of the call—which lasted more than an hour—was to berate and disparage Oakley. Citro accused Oakley that he was unduly influenced by his superiors in the determination of fault, that Ms. Diekmann was equally at wrong and suggested that Oakley add a supplemental report to that effect. Oakley reported the Citro overture to a superior officer and then to the Chief of Police.

The Chief of Police imposed two suspensions, each for five work days: the first, for the neglectful manner of operation of the police car into a controlled intersection; the second, because Citro "did call Police Officer James Oakley at his residence and attempt to influence officer Oakley's investigation of the aforementioned traffic accident." The sanctions were appealed to the Personnel Hearing Board which, after full hearing, affirmed the suspensions in a report and order. Citro concedes that the sanction imposed for the careless operation of the police car rests on substantial evidence, and does not dispute that action. Citro does contend, however, that there was no evidence of a standard of conduct his action violated, nor was there evidence that Citro attempted to exploit the friendship with Oakley to induce a change in the official report.[1]

■ We confront first the contention that there was no evidence to sustain the Personnel Hearing Board finding of a "friendly relationship" subsistent between the officers which Citro attempted to exploit. There was evidence that Citro and Oakley were colleagues on the police force, that they had trained together and worked together as a team in accident investigation. *Friend* describes a range of relationships from the intimate to the casual—from kinship and marriage to a group affiliation where friendly feelings are assumed and cooperation expected. *Adams v. Simpson,* 358 Mo. 168, 213 S.W.2d 908, 913 (1948). *See also* Webster's Third New International Dictionary, 911 (Unabridged ed. 1976)— *friend.* The evidence shows that the principals were *friends* within this range of definition.[2] The gist of the citation, in any event, was not the exploitation of a subsistent friendship, but the attempt by one officer to influence an official action of another to a personal advantage.

There remains the contention that the notice of suspension—the formal charge [*see* footnote 2]—does not define a standard of conduct officer Citro was under duty to discharge, and therefore punishable for the breach.

The proceeding before the Personnel Hearing Board was on full evidence—a *contested case* within § 536.010(2), RSMo 1978 —at which the appellant Citro was represented by counsel. The appellant took judicial review of the adverse decision of the administrative body by a petition for re-

---

1. The verbatim finding by the Personnel Hearing Board of this latter citation of misconduct and sanction by the Chief of Police was:

With respect to the five-day suspension as a result of officer Citro contacting Traffic Investigating Officer James Oakley, at his residence, this five-day suspension is also upheld.

The Board feels that while the testimony did not develop evidence of threats of bodily harm to officer Oakley, still the Board did conclude from the testimony that the purpose of the call was to attempt to influence officer Oakley to change his report in some fashion to either absolve officer Citro of blame or minimize such blame. The Board does feel that it is improper for one officer to attempt to impose upon his friendship with a fellow officer and because of said friendship, attempt to get the fellow officer

to change a report, and this is what the Board concludes happened in this particular case.

2. The *friendship* terminology which couches the decision of the Personnel Hearing Board administrative review, in any event, was no part of the citation lodged by the Chief of Police and, therefore, supererogatory. That formal charge was:

"[O]n March 20, 1981, at approximately 6 p.m., you did call Police Officer James Oakley at his residence and attempt to influence Officer Oakley's investigation of the aforementioned traffic accident. Therefore, I am suspending you from your duties as a police officer with this Department for an additional five working days."

view—as contemplated by § 536.130. That formal request for judicial review—otherwise fastidiously articulated—neither presents the issue nor intimates it. The respondent City of Lee's Summit argues that the neglect of the petition for review to assert "as a ground of administrative error" that the Notice of Suspension describes no specific rule or standard of discipline infracted by the conduct alleged against Citro precludes that contention for the first time on this appeal.

Citro does not argue that the petition for review encompasses the contention now presented: that "there is no evidence of a standard of conduct imposed upon the appellant which has been violated by the appellant." Rather he asserts that Rule 100.-07(b)(3) [3] which defines the scope of judicial review to encompass a contention that the agency action "is unsupported by competent and substantial evidence upon the whole record" legitimates a contention, even made for the first time in the court of appeals, that an agency decision to impose a discipline for the violation of a standard of conduct where that standard does not appear in the record does not rest on "competent and substantial evidence." The appellant fashions two arguments for reversal from this premise: one on constitutional grounds, the other on grounds of administrative error.

The constitutional error, as formulated in the brief, contends: "Due process of law requires that before property can be taken from a citizen, including five days pay, that citizen must know the standard of conduct he must meet to avoid the taking." That contention fails for a basic reason. The petition for review lodged in the circuit court [presumably, the first available opportunity to make the contention in such a proceeding] asserts only: "[t]he hearing afforded plaintiff denied plaintiff his constitutionally protected rights of due process of law and equal protection of the law." Such an assertion—devoid of the facts of the violation—describes no constitutional infraction and so preserves none. *City of St. Louis v. Butler Co.*, 358 Mo. 1221, 219 S.W.2d 372, 380[10] (banc 1949); *Gray v. City of Florissant*, 588 S.W.2d 722, 724 (Mo. App.1979).

The singular requisites for the preservation of constitutional review aside, the question remains whether [former] Rule 100.07 [present § 536.140] imposes upon a court of appeals the duty to decide ordinary administrative error not presented to the circuit court by a petition for review.[4] The rule prescribes, as does the statute, that judicial review in the circuit court shall be *upon the petition and the record filed* and the scope of inquiry on review *may extend*

---

3. The entire Administrative Rule composite—Rule 100 [subdivisions 100.01 to 100.08 inclusive] was repealed effective January 1, 1983, and in lieu new Supreme Court Rule 100—"Judicial Review of Administrative Decision" was adopted. [*See* 635 S.W.2d xxx (1982)] The effect of new Rule 100.01 is to restore the governance of the judicial review of administrative decisions in the circuit court to the procedures delineated in §§ 536.100 through 536.150—from whence the rules originated and which they rescripted. Thus, since January 1, 1983, the scope of review of a contested agency decision in the circuit court has been defined by § 536.140—to the same effect as the discarded rule.

4. The administrative error Citro asserts we must treat on appeal, although not presented to the circuit court by petition for review, is—we iterate—that the discipline imposed for the violation of a standard of conduct does not rest on substantial evidence where that standard is not in the record. There was, in fact, testimony by the Chief of Police that the Citro telephone call to Oakley violated § 100–1.24 of the Department of Rules and Regulations. That section was not cited in the Notice of Suspension nor received in evidence. It was not before the court nor was knowledge that the section was the basis for the citation lodged against him imputed to Citro by any rule of evidence. An administrative agency may take "official notice" of its own regulation to come to a decision, so that the rule itself need not be formally in evidence to sustain a disciplinary action—but the regulation which forms the basis for the sanction must be in the record in such fashion—as in the citation of the infraction—so as to give notice of the charge. *Prokopf v. Whaley*, 592 S.W.2d 819, 823[5–6] (Mo. banc 1980). That principle does not avail here, of course, because the Notice of Suspension cited no rule or regulation as the basis for the disciplinary proceeding.

to determine whether the action of the agency fails to conform to law in seven particulars—among them [Rule 100.-07(b)(3)], whether "unsupported by competent and substantial evidence upon the whole record." That the procedure envisions that the court of review shall confine decision to the petition for review is made implicit by Rule 100.06—Record on Judicial Review:

(a) Record—Filing—Contents

Within thirty days after the filing of the petition or within such further time as the court may allow, the record before the agency shall be filed in the reviewing court....

....

(3) ... *Any matter not essential to the decision of the questions presented by the petition may be omitted.* [emphasis added]

That § 536.140 [as did former Rule 100.-07] defines the scope of review in a contested administrative case at all is because the circuit court in that exercise acts in an unaccustomed role—that of a *court of review.* The usual function of the circuit court—"to have *original* jurisdiction over all cases and matters" [5] (emphasis added) does not confer the appellate function nor inform of its nature. That role is enabled by the constitution which subjects a species of final administrative decisions to "direct review by the courts *as provided by law.*" [6] *The law*—§ 536.110 selects the circuit court as the forum for review, and *the law*—§ 536.140—defines the scope of that

review. In the absence of these enactments, the circuit court could not function as a court of review, nor understand the legitimate bournes of that authority. Those enactments confer both jurisdiction to review and describe the extent of that authority. A contention [such as Citro asserts], therefore, that the mere enactment of § 536.140 evinces a purpose to impose on the circuit court the full scope of review in every case, whether or not preserved by petition, distorts its inherent rationale.[7] These statutes evince, rather, that a petition for review [as any other petition for suit in the circuit court] functions to initiate the judicial process by a pleading which defines the issues to be met by the adversary and motivates a court to its adjudicative function.

This court in *Ross v. Robb,* 651 S.W.2d 680 (1983) put to rest the question the appeal poses and our conclusion—that judicial review of a contested administrative decision is confined to the petition for review—merely confirms the thorough and confident analysis *Ross* accomplishes as to both § 536.140 and related cases to come to adjudication. *See also Gaffigan v. Whaley,* 600 S.W.2d 195, 197[1] (Mo.App.1980) and *Queen of Diamonds, Inc. v. Quinn,* 569 S.W.2d 317, 320[7] (Mo.App.1978).

The appellant Citro asserts as the ground of administrative error a contention not presented by the petition for review.

5. Article V, § 14, Mo. Const. 1945 as amended at special election August 3, 1976.

6. "All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law." Article V, § 18, Mo. Const. 1945 as amended at special election August 3, 1976.

7. In contrast to the judicial review by the circuit court, newly promulgated Rule 100.02, which establishes direct review in the appellate courts of certain final administrative decisions, does not define the scope of that review—no doubt because the appeals court needs no instruction on its legitimate review function.

Rule 100.02(i), moreover, conforms that appeals procedure to the usual practice on appeal—that "[t]he form, contents, filing and service of briefs ... shall be as provided in Rule 84." That rule [84.04(a) and (d)] prescribes that the litigant who takes appeal specify the errors asserted for review. Thus, judicial review, whether by the circuit court or by the appellate court, is of *preserved error* only.

The argument Citro asserts—that the circuit court is bound to an enforced review of every ground encompassed within its scope of review, whether presented or not—would introduce a dichotomy in practice, and unduly favor litigants before the circuit court by a less meticulous standard of appellate diligence.

There is no issue preserved for judicial review. The appeal is dismissed.

All concur.