Carl ARTMAN, D.O., Appellant,

v.

**STATE BOARD OF REGISTRATION FOR the HEALING ARTS,** Respondent.

No. 78270.

Supreme Court of Missouri, En Banc.

Jan. 23, 1996.

Rehearing Denied Feb. 20, 1996.

Lawrence J. Fleming, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Penney R. Rector, Asst. Atty. Gen., Jefferson City, for respondent.

BENTON, Judge.

Dr. Carl Artman appeals from the revocation of his medical license by the State Board of Registration for the Healing Arts. Because the validity of a statute is at issue, this Court has jurisdiction. *Mo. Const. Art. V, § 3.* Affirmed.

## I.

### *Facts*

Practicing medicine since 1969, Artman maintains a family practice in Farmington. In March 1991, the Board notified him of its "review and investigation," ordering him to appear at a hearing to "gather information" and "evaluate whether there is cause to question your competency."

Three times, Artman's attorney requested copies of any complaints precipitating the investigation and any information on the subjects to be addressed at the hearing, so that Artman could prepare. The Board never responded. Artman claims ignorance of any recent complaints, although in 1989 the Board questioned him about several obstetrical patients who had (apparently) complained in the late 1980s.

At the hearing, Board members inquired about his background, general practice, and specific methods of treatment and diagnoses for hypothetical patients with various prob-

lems. No questions purportedly concerned actual patients; the Board's counsel presented no other evidence. Artman, though represented by counsel, was given no opportunity to present evidence.

After the hearing, Artman's attorney requested a transcript and the Board's file on Artman. The Board, as before, did not answer. After a second letter—citing legal authority for access to the file—Artman received part of the file and the address of the court reporter. The Board claimed that the remainder was protected by the peer review privilege and unspecified attorney-client and mental impression/work product privileges. The partial file received by Artman did not indicate who initiated the review or what motivated the hearing.

In August 1992, the Board issued its "Order Finding Probable Cause" to question Artman's competency to practice medicine. The Board listed several areas where members believed Artman's answers during the hearing were deficient. The Board ordered Artman to submit "to re-examination generally by taking and passing the Special Purpose Examination (SPEX) within two consecutive attempts, the first attempt being on December 31, 1992, and the second attempt if necessary, being on March 18, 1993." The Order warned that failure to take the exam is an admission of the allegations and the Board would revoke Artman's license without leave to reapply for 7 years (the longest period allowed, § *334.100.5 RSMo Supp. 1990* [1]).

The Order listed no time or place for the reexamination, nor where Artman could discover such information. Before the first test date, Artman's attorney wrote the Board asking the specific time and place of the exam. Yet again, the Board did not respond. Artman did not take the exam on either test date.

In 1994, the Board held the final disciplinary hearing. Board counsel presented affidavits that Artman had not taken the SPEX exam. Artman presented no evidence. Consistent with its earlier order, the Board re-

1. Unless otherwise noted, all references to Missouri statutes refer to RSMo Supp.1990.

voked Artman's license without leave to reapply for 7 years, finding that his failure to take the exam admitted his incompetency. Artman sought review in circuit court challenging the medical incompetency statute, § 334.100.2(25), both facially and as applied.

## II.

### *Statutory Procedure*

Section 334.100.2, governing physician discipline, begins:

> The board may cause a complaint to be filed with the administrative hearing commission as provided by chapter 621, RSMo, against any holder of any certificate of registration or authority, permit or license required by this chapter ... for any one or any combination of the following causes:

After various specific causes for discipline, subdivision 25 lists one general cause: "Being unable to practice as a physician and surgeon ... with reasonable skill and safety to patients by reasons of medical or osteopathic incompetency." § *334.100.2(25)*.

Before disciplining a doctor for medical or osteopathic incompetency, the Board must, after a hearing, find probable cause to question the doctor's competency. § *334.100.2(25)(a)*. The statute sets no standards for convening a probable cause hearing or for the type of evidence required.

If after the hearing the Board finds probable cause, it can compel the physician to be reexamined to establish competency to practice medicine. *Id.* No statutory procedure for such examination exists and the Board, though authorized, has adopted no regulations on reexaminations for currently licensed physicians. *See §§ 334.125.1 & 334.100.2(25)(a)*.

Before a physician may be forced to undergo reexamination, the Board must send written notice. § *334.100.2(25)(d)*. Failure of a physician to submit to the examination when directed constitutes an admission of the allegations. *Id.* In such a case, the board may enter a final order "without the presentation of evidence, unless the failure was due to circumstances beyond [the physician's] control." *Id.*

## III.

### *Authority of the Board*

 Artman first argues that the Board exceeded its jurisdiction because only the Administrative Hearing Commission can find cause for disciplining a physician. Subsection 2 of § 334.100 does generally require that a complaint be filed with the AHC. *See Bodenhausen v. Missouri Bd. of Registration for the Healing Arts,* 900 S.W.2d 621, 622 (Mo. banc 1995). However, subdivision (25)(e) specifically exempts medical incompetency proceedings from the AHC's jurisdiction. § *334.100.2(25)(e)*. Where the charge is general medical incompetency rather than specific medical misconduct, the Board serves as investigator, prosecutor, judge, and jury. Although a neutral decisionmaker is preferable, the mere fact that the Board both initiates a charge and then tries it, does not, by itself, violate due process. *Rose v. State Bd. of Registration for Healing Arts,* 397 S.W.2d 570, 574 (Mo.1965). Thus, the Board had statutory and constitutional authority to conduct medical incompetency proceedings without involving the AHC.

## IV.

### *Constitutionality of the Probable Cause Hearing*

Artman claims that the probable cause hearing was constitutionally deficient, both as established by statute and as conducted in his case. He claims a denial of due process because he was never notified of the specific allegations precipitating the probable cause hearing nor the potential areas of inquiry. In addition, he argues that standardless selection of physicians for competency investigations renders the statute unconstitutionally vague and invites arbitrary and discriminatory enforcement.

### A. **Sufficiency of Procedural Protections**

██ The Board responds that due process protections do not apply to probable cause proceedings under § 334.100.2(25)(a), because such proceedings are merely "investigatory." The requirements of due process

vary with the type of proceeding involved. *Hannah v. Larche* 363 U.S. 420, 440, 80 S.Ct. 1502, 1513, 4 L.Ed.2d 1307 (1960). When government action is not an adjudication but instead merely a general fact-finding investigation, the agency need not provide the full panoply of judicial procedures. *Id.* at 442–43, 80 S.Ct. at 1515.

True, the agency at issue in *Hannah* had only "investigative and fact-finding" functions. *Id.* at 441, 80 S.Ct. at 1514. Thus, it did not have to reveal the identities of alleged victims who filed complaints, nor the exact charges if they would reveal the victims' identities. *Id.* at 442–43, 80 S.Ct. at 1514–15.

■ In contrast, the Board does have more power over physician competency, including power to compel a physician to undergo a professional competency examination and to conduct final disciplinary hearings. Nevertheless, the Board's greater power does not entitle a doctor to the full protections of procedural due process at the probable cause hearing. *See SEC v. Jerry T. O'Brien, Inc.* 467 U.S. 735, 741–42, 104 S.Ct. 2720, 2724–25, 81 L.Ed.2d 615 (1984) (SEC, while investigating, did not have to provide full due process despite its power to issue subpoenas and force compliance). Because the Board did not adjudicate or make binding determinations about Artman at the probable cause hearing, the hearing was investigative in nature. Where the Board gave Artman notice of the hearing and allowed him to have his attorney present, its withholding of information about specific complaints and potential areas of inquiry did not violate the due process clause. *See id.*

■ So long as before a license is revoked, the physician has a meaningful hearing with notice and an effective opportunity to defend, due process is satisfied. *See Goldberg v. Kelly,* 397 U.S. 254, 268–69, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970).

**B. Arbitrary Enforcement**

Artman claims that § 334.100.2(25) is unconstitutional on its face because it provides no guidelines to channel the Board's discretion and ensure enforcement in a nonarbitrary, nondiscriminatory fashion. In the absence of such standards, the Board might abuse its discretion. However, there is no evidence of such abuse in this case.

■ In order to mount a facial challenge to a statute, the challenger must establish "that no set of circumstances exists under which the Act would be valid." *U.S. v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). It is not enough to show that under some conceivable circumstances the statute might operate unconstitutionally. *Id.* The "overbreadth" doctrine does not apply outside the limited context of the First Amendment. *Id.* Thus, it is not enough for Artman to show that the statute might operate unconstitutionally in some cases. Rather, he must show that as applied to him, the Board used its power in an arbitrary or discriminatory manner.

■ True, at the probable cause stage, the evidence in the record before this Court consisted of only four complaints from over a decade ago. However, according to the record, in 1989 the Board questioned Artman about his care of a number of obstetrical patients who had (apparently) filed recent complaints. Although a more complete record is preferable, the Board did have sufficient evidence to question Artman's competency. Artman offered no evidence that the Board acted arbitrarily in requiring him to appear at the probable cause hearing. *See Rose,* 397 S.W.2d at 575.

■ Artman also attacks the Board's failure to promulgate regulations to enforce § 334.100.2(25). Granted, the absence of such regulations may increase the opportunity for action motivated by malice or prejudice. Artman, however, cites no authority that an agency must issue regulations simply because it has power to do so. The mere absence of regulations on reexamination does not invalidate the medical incompetency statute.

**V.**

*Equal Protection*

■ Artman also asserts a violation of his Fourteenth Amendment right to equal pro-

tection because he was required to attend a hearing and take an exam not required of other physicians. *U.S. Const. amend. XIV § 1.* However, when the treatment at issue does not involve a fundamental right or a suspect classification, it survives an equal protection challenge so long as it bears a rational relationship to a legitimate government interest. *Gregory v. Ashcroft,* 501 U.S. 452, 470–71, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991); *Mahoney v. Doerhoff Surgical Services,* 807 S.W.2d 503, 512 (Mo. banc 1991).

■ The state has a legitimate interest in protecting its citizens from incompetent physicians. Requiring doctors suspected of being incompetent to attend an investigatory hearing, or submit to reexamination, is rationally related to that interest. Neither the statute nor the Board's treatment of Artman violates the Equal Protection Clause.

### VI.

#### *Contested Case Status of Probable Cause Hearing*

■ Artman additionally claims that the Board's failure to advise him of specific complaints and areas of inquiry violated the Missouri Administrative Procedure Act. He asserts that because the probable cause hearing is required by law, it is a "contested case" under § 536.010(2) RSMo 1986, entitling him to the procedural protections in the MAPA. This Court need not reach this issue, which was not raised before the Board or the circuit court. Points raised for the first time on appeal are not preserved for review. *See Keesee v. Meadow Heights R–II School Dist.,* 865 S.W.2d 818, 820–21 (Mo. App.S.D.1993); *Jackson v. Sayad,* 741 S.W.2d 847, 850 (Mo.App.E.D.1987); *Citro v. City of Lee's Summit,* 658 S.W.2d 86, 89 (Mo.App.W.D.1983).

### VII.

#### *Notice of Reexamination*

■ In his final point, Artman argues that the Board provided insufficient notice of reexamination and therefore lacked authority to revoke his license. He asserts that the

Board's notice was deficient in failing to inform him of either the time or place of the exam. Although this Court does not approve the Board's notice, Artman failed to preserve the point for appeal because he did not present it to the circuit court or the Board. In neither the petition for review nor the record before the circuit court did Artman complain of insufficient notice. This argument was waived by the failure to properly preserve it for review. *See Keesee,* 865 S.W.2d at 820–21; *Jackson,* 741 S.W.2d at 850; *Citro,* 658 S.W.2d at 89.

### VIII.

#### *Conclusion*

The judgment of the circuit court upholding the Board's order revoking Artman's medical license is affirmed.

HOLSTEIN, C.J., PRICE, LIMBAUGH, ROBERTSON, and COVINGTON, JJ., and SHANGLER, Senior Judge, concur.

WHITE, J., not sitting.