**John L. BOYER, Appellant,**

v.

**CITY OF POTOSI, Missouri,
Respondent.**

**No. ED 79546.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 4, 2002.

John L. Boyer, Potosi, MO, for appellant.

Ryan S. Shaughnessy, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Presiding Judge.

John L. Boyer ("Boyer"), former mayor of the City of Potosi, Missouri ("City"), appeals from a judgment of the Circuit Court of Washington County, Missouri affirming an administrative decision of the Board of Aldermen ("Board") of City im-

peaching and removing him from office.[1] The Board convicted Boyer on five of the Articles of Impeachment ("impeachment articles"), finding that he had improperly removed Donald Cooksey ("Cooksey") from his position as chief of police of City in violation of Sec. 79.240 RSMo 1994[2], certified and permitted false claims for wages against City, made a false report of misconduct by Cooksey to the Board, and disclosed confidential medical records to the general public.[3] We affirm in part and reverse in part.

At an open meeting on March 11, 1999, the Board adopted impeachment articles for the removal of Boyer as mayor, and scheduled the impeachment hearing for March 23, 1999. The impeachment articles charged Boyer with having committed a variety of acts of misconduct and malfeasance while acting as mayor. Boyer was not present at the open meeting of March 11, 1999. William P. Cronan, counsel for Boyer, appeared at the March 23, 1999 hearing and requested a continuance, which the Board granted, continuing the case until March 29, 1999.

The Board's attorney presented the testimony of several witnesses at the impeachment hearing, and offered into evidence thirty-five exhibits. Boyer's attorney did not call any witnesses, but did offer seventeen exhibits into evidence.[4] Boyer's counsel apparently withdrew these exhibits from the administrative record at the conclusion of the impeach-

---

1. Boyer was elected the mayor of Potosi, a fourth-class city, in April 1998.

2. All further statutory references are to RSMo 1994 unless otherwise noted.

3. The Board originally charged Boyer with twenty-seven impeachment articles on March 11, 1999, and dropped a number of the arti-

cles at the March 29, 1999 impeachment hearing.

4. It appears from the transcript of the impeachment hearing that Cronan did not actually identify and offer into evidence any exhibits marked "C," "M," or "O," though the exhibits that he offered and were entered into evidence began with "A" and ended with "T."

ment hearing.[5] The Board found Boyer guilty of some impeachable offenses, not guilty of others, and removed Boyer from office for misconduct and "other good cause."

On April 19, 1999, Boyer's lawyer filed a petition for administrative review of the impeachment hearing in the Circuit Court of Washington County. The petition alleged that the impeachment was illegal because the Board's impeachment was a rush to judgment in that it was against the advice of the city attorney, that the Board ignored the procedures for impeachment prescribed by statute, and that the decision of the Board was not supported by substantial evidence.

City filed motions for a more definite statement and to strike on April 22, 1999. The trial court sustained the motion to strike after a hearing on May 12, 1999 at which Boyer failed to appear either in person or by counsel.

Boyer entered his appearance, pro se, and filed an amended petition with various exhibits on June 1, 1999, and on June 18, he filed a request for the transmittal of the administrative record ("record") of the impeachment hearing.[6] City filed motions to strike and to dismiss Boyer's amended petition on August 5.

Boyer filed exhibits to be included in the record on September 29, 1999, which the trial court admitted into the record. The record was filed with the trial court on October 12.[7] The trial court held a hearing on City's motions to strike and to dismiss on November 9, and sustained both motions, ordering that paragraphs one to four of Boyer's amended petition be struck, as well as the exhibits attached to the amended petition, and dismissing the case.[8] Boyer appealed from this judgment.

This court in *Boyer v. City of Potosi*, 38 S.W.3d 430 (Mo.App.2000) affirmed the tri-

---

5. Doris Eye, the city clerk of Potosi and custodian of its records, stated in her certification of the administrative record of the impeachment hearing that Boyer's counsel had withdrawn Boyer's exhibits A through T at the conclusion of the impeachment hearing on March 29, 1999.

6. The exhibits attached to Boyer's amended petition, with several exceptions, do not appear to be the same exhibits offered by Boyer's attorney at the impeachment hearing. The record on appeal before this court lacks the exhibits to Boyer's amended petition and lacks the exhibits filed by Boyer with the trial court on September 29, 1999, and made a part of the record.

7. The city clerk and custodian of its records, stated in her certification of the record that Cronan had withdrawn Boyer's exhibits A through T at the conclusion of the impeachment hearing on March 29, 1999, and that was the reason that those exhibits were not in the record filed by Potosi with the trial court on October 12, 1999. A letter from Cronan to the Board dated April 2, 1999, which Boyer had included in the exhibits that he filed on September 29, states that Cronan had provid-

ed the exhibits in question to the board and to Ryan Shaughnessy, the attorney representing Potosi, though it is possible that the exhibits were provided and then withdrawn by Cronan, as attested to by the city clerk. The docket sheet for this case in the circuit court of Washington County reflects that Potosi, through its attorney, filed the administrative record for the impeachment hearing on August 5, 1999. The docket sheet also indicates that the administrative record was filed on October 12, 1999, which seems to be the accurate date as Doris Eye certified the accuracy of the record on September 22, 1999, and the file stamp appears to indicate a filing in October, 1999.

8. Nothing in the record before this court indicates that the trial court struck the exhibits filed by Boyer with that court on September 29, 1999, which may or may not have been the same as the exhibits referred to in the impeachment hearing as Boyer's exhibits A through T. Lacking these exhibits, this court can only speculate as to their identity and nature.

al court's striking of paragraphs 2 through 4 of the amended petition and of the exhibits attached thereto, but reversed the striking of paragraph 1 and the dismissal of Boyer's amended petition, and remanded the case back to the circuit court for further proceedings.

On April 18, 2001, the case was heard on remand by the Honorable Raymond Weber of the Circuit Court of Washington County. The trial court found that the findings of fact and conclusions of law of the Board as to impeachment articles 1, 6, 7, 10, and 11 were supported by competent and substantial evidence. The court also determined that based upon the evidence, the Board's decision to impeach and remove Boyer as mayor for cause was supported by competent and substantial evidence, and the court affirmed the impeachment and removal of Boyer. Boyer appeals from that judgment to this court pro se.

In his first point on appeal, Boyer asserts that the trial court erred by failing to consider his charge that City denied him due process by failing "to preserve and submit all evidence presented, accepted and reviewed" at the impeachment hearing for the record submitted to the trial court, and that the trial court therefore erred in striking exhibits submitted by Boyer to the trial court.

■ We do not need to decide this issue because it has not been properly preserved for appellate review. The record on appeal, which consists of the legal file and a partial transcript of the trial on remand, shows that this specific alleged error was not brought to the trial court's attention. Nothing in Boyer's amended petition or in City's answer refers to this issue, and neither Boyer nor City filed a motion regarding it. There is no evidence in the record of any objection or motion made by Boyer or any ruling by the trial

court on this issue. The partial transcript requested by Boyer contains only a reference by City's attorney, Ryan Shaughnessy, "to his [Boyer's] allegation that the record was not preserved[.]" It is impossible to tell from the record provided to this court what, if anything, Boyer had objected to or requested from the trial court. "Even in a court-tried case, where a post-trial motion is not necessary to preserve *an otherwise properly raised issue* for an appellate review, the appellant must make some effort to bring the alleged error to the trial court's attention." (emphasis added). *McMahan v. Missouri Dept. of Social Services, Div. of Child Support Enforcement,* 980 S.W.2d 120, 126 (Mo.App. 1998).

■ Rule 81.12(a) requires that the record on appeal "shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented....." Further, Boyer did not file for review by this court the exhibits which he claims were struck by the trial court, and which he claims City failed to preserve in the record. The appellant must prepare a legal file and order a transcript such that the record contains all the evidence necessary for the determination of the questions presented to the appellate court. *Environmental Quality Research, Inc. v. Mercantile Trust Nat. Ass'n,* 854 S.W.2d 500, 501 (Mo.App.1993). Boyer did not prepare a record that meets the requirements of Rule 81.12(a).

■ We consider, *ex gratia,* Boyer's first point. Boyer had the opportunity to supplement the record provided to the trial court pursuant to section 536.130.4. The legal file shows he did file exhibits with the trial court on September 29, 1999, which were made a part of the record by the trial court. Nothing in the record before this court indicates that the trial

court struck any of these exhibits. The trial court's order and judgment of November 9, 1999, struck only the exhibits attached to Boyer's amended petition, not the exhibits filed on September 29. City's alleged denial of due process by failing to preserve and submit the record was rendered moot by Boyer's filing of exhibits which the trial court made a part of the record on September 29, 1999.

Boyer also alleges in his first point on appeal that because the trial court failed to consider his charge that City denied him due process regarding the preservation of the record that the trial court therefore erred in striking exhibits submitted by Boyer to the trial court. Assuming that Boyer was referring to the exhibits attached to his amended petition, which the trial court struck in its order of November 9, 1999, this issue was addressed in *Boyer v. City of Potosi*, 38 S.W.3d at 434, in which this court affirmed the trial court's actions in striking paragraphs 2 through 4 of Boyer's amended petition and the exhibits attached thereto. Point denied.

We turn now to Boyer's remaining claims of error by the Board. When reviewing an administrative action, this court examines the decision of the administrative agency, and not the judgment of the circuit court. *State ex rel. Sanders v. Martin*, 945 S.W.2d 641, 642 (Mo.App.1997). Judicial review of the decisions of an administrative agency is governed by sections 536.100 to 536.140. We will uphold the decision of an agency unless it is in violation of the constitution; in excess of its authority; unsupported by competent and substantial evidence on the whole record; unauthorized by law; made upon unlawful procedure or without a fair trial; arbitrary, capricious or unreasonable; or involved an abuse of discretion. Section 536.140.2.

■ Boyer's remaining points II through VII fail to identify the administrative rulings being challenged, in violation of Rule 84.04(d)(2). Allegations of error not briefed or not properly briefed shall not be considered in any civil appeal. Rule 84.13(a). Pro se appellants have to meet the same briefing requirements as attorneys, and must comply with the Missouri Supreme Court Rules, including Rule 84. *Collins v. Ruffus*, 63 S.W.3d 303 (Mo. App.2001). We will, to the extent possible, review Boyer's claims *ex gratia*.

In his second point on appeal, Boyer contends that City erred on all counts of impeachment articles by accepting "oral hearsay evidence that was objected to and did not accept the best evidence of the record that was produced at the hearing."

■ Because Boyer failed to comply with the briefing rules, it is not clear what Boyer claims to be the Board's error in his second point. At the impeachment hearing, Boyer's lawyer made a number of objections relating to hearsay and/or the best evidence rule, many of which were sustained, or prompted City's attorney to rephrase his questions in an acceptable form. The Board did overrule several hearsay related objections made by Boyer's counsel during the testimony of Doris Eye, city clerk ("city clerk") for City and custodian of its records. The objections apparently giving rise to the allegation of error by Boyer relate to the city clerk's testimony about the lack of official records/minutes concerning a vote by the Board to remove Cooksey as chief of police of City. As several of the cases cited by Boyer on this point state, the acts of a political body such as a fourth-class city as City are expressed only through the minutes of its journal of proceedings, "and consequently such minutes are the best evidence of what they purport to represent." *Scales v. Butler*, 323 S.W.2d 25, 28

(Mo.App.1959). These minutes would be the best evidence of official actions taken by the Board, such as a vote to remove the chief of police, and parol evidence of the contents of the minutes would be objectionable hearsay, except to correct defects or omissions in the minutes.

▪ In the case at hand, the city clerk testified not to the contents of the minutes, but rather to the lack of any such minutes or official record regarding a vote by the Board to remove Cooksey. Parol evidence is generally considered admissible to prove a negative fact, such as the non-existence of public records. 32 C.J.S. Evidence section 1094 states that "[w]here it is sought to prove a negative, that is, that facts or documents do not appear of record, or that as to certain acts or proceedings the record is silent, parol evidence is admissible as primary proof; the record is not higher evidence.... That documents or facts do not appear of record may be proved by the sworn testimony of the person who is legal custodian of the record[.]" The Federal Rules of Evidence state that "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness: (7) ... Evidence that a matter is not included in the memoranda reports, records, or data compilations, in any form, kept, in accordance with the provisions of paragraph (6), to prove the nonoccurence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness." F.R.E. 803(7) (2002). While the Federal Rules of Evidence are not binding on Missouri courts, they are suggestive.

At least one Missouri court has addressed the issue of proof of negative facts regarding public records by parol evidence. "Where there is a mass of records to examine, the law does not require the production of certified copies of all of them to prove the negative fact that a certain decree cannot be found. Such proof may rest in parol *ex necessitate rei.* But there should and could have been furnished the testimony of the custodian of those records, or of other persons who qualified as familiar with them and all of them, in order that the negative fact might be clearly shown." *Nelson v. Jones,* 245 Mo. 579, 151 S.W. 80, 83 (Mo.912). The courts have determined that public records are not always unimpeachably the best evidence, and they can be corrected or supplemented by parol evidence. *See State ex inf. Nixon v. Corley,* 896 S.W.2d 931, 932 (Mo.1995); *State ex rel. McCrate v. Rhodes,* 349 Mo. 1071, 163 S.W.2d 978, 980 (1942); *Mississippi–Fox River Drainage Dist. No. 2 of Clark County v. Plenge,* 735 S.W.2d 748, 753 (Mo.App.1987).

We find that the Board did not commit reversible error in admitting the testimony of the city clerk regarding the absence of minutes. Point denied.

In his third point on appeal, Boyer asserts that the Board erred by taking judicial notice of a city ordinance regarding impeachment article 11, which alleged that Boyer had disclosed confidential medical information of a City employee to the public, and that it erred by accepting hearsay evidence instead of requiring the best evidence of the record.

▪ This Court need not reach this issue. Boyer's lawyer did not object to the offer of exhibit 11, which contained a copy of the relevant ordinances of City regarding personnel records and confidentiality, and he did not object to Board taking judicial notice of these provisions of the Potosi Municipal Code. This issue was first raised in this court on appeal. Boyer's counsel also did not object to the testimo-

ny of the city clerk regarding exhibit 11 and impeachment article 11. The city clerk, who is the custodian of records for City, identified exhibit 11 as being part of the municipal code book and read from the exhibit. The city clerk also identified exhibit 12 as the regular council meeting minutes of July 27, 1998, which meeting she attended. She summarized portions of those minutes, and stated that Boyer had initiated the discussion concerning Cooksey's personnel records, and that that discussion was held in open session. Boyer's attorney failed to object to this testimony. "Points raised for the first time on appeal are not preserved for review." *Artman v. State Bd. of Registration for Healing Arts*, 918 S.W.2d 247, 252 (Mo.1996). Point denied.

In his fourth point on appeal, Boyer contends that "[city] erred when it made no conclusions of law and decision was not supported by substantive law on impeachment charge Number 10[, which alleged that Boyer had made a false report to the Board regarding the June 4, 1998 incident with Cooksey,] in that agency relied on hearsay evidence that was not supported by the record." In his argument on this point, Boyer states that the testimony of the city clerk regarding the incident of June 4, 1998 between Cooksey and Boyer and the statements of Boyer in the July 31, 1998 meeting of the Board constitute inadmissible hearsay, and that the best evidence of the July 31, 1998 meeting would be the minutes of that meeting, which were not in evidence.

■■■ This point was not properly preserved for appeal. Boyer's counsel did not object to the testimony of the city clerk regarding impeachment article 10, the June 4, 1998 incident between Cooksey and Boyer, or Boyer's statements in the July 31, 1998 meeting. "Points raised for the first time on appeal are not preserved for review." *Artman*, 918 S.W.2d at 252.

■■■ Even if Boyer's claim had been preserved for review, the city clerk's testimony about what she saw on June 4, 1998 is not hearsay. Her testimony about what Boyer stated to the Board at the July 31, 1998 meeting is admissible, although there presumably were minutes of that meeting. Boyer is correct that minutes are generally the best and only evidence by which actions of a political body may be shown when that political body is required by law to maintain records of its actions. *Corley*, 896 S.W.2d at 932. However, the city clerk's testimony as to the July 31, 1998 Board meeting does not pertain to the action of the Board, but to the conduct of an individual member. "To that end, the minutes are evidence of the issue at hand, but they are not, as a matter of law, the sole evidence that can be considered." *Id.* Point denied.

In his fifth point on appeal, Boyer asserts that "[city] erred in that it ignored the best evidence in the record submitted at hearing an[d] accepted refuted hearsay as evidence with probative value on impeachment charge numbers 6 and 7."

■■■ This point was also not properly preserved for appeal. Boyer's counsel did not object to the testimony of Major Robert Reed ("Major Reed") at the impeachment hearing of March 29, 1999. "Points raised for the first time on appeal are not preserved for review." *Artman*, 918 S.W.2d at 252.

Moreover, Major Reed's testimony is not hearsay. He testified from personal knowledge as to what he directly observed and stated regarding impeachment articles 6 and 7. This is direct evidence with probative value. In addition, exhibits 9 and 10, which relate to impeachment articles 6 and 7, had been entered into evidence for the

Board to consider for their probative value. Point denied.

In his sixth point on appeal, Boyer states that the Board "erred when it substituted [a] new charge and did not find appellant gui[l]ty of original charge number 1, but rather misapplied law on charge number 1 and relied on secondary evidence rather than the best evidence in the record."

The evidence presented at the March 29, 1999 impeachment hearing showed that Cooksey was removed by Boyer in violation of Sec. 79.240 without the approval of a majority of the elected members of the Board.[9] City's lawyer in his opening statement at the impeachment hearing of March 29, 1999, stated that the evidence would show that Boyer removed Cooksey from office without the approval of the Board in violation of Sec. 79.240. The city clerk testified on this issue, as did the city attorney, David Orzell. City's attorney referred to having proved this point in his closing argument at the impeachment hearing. The opening and closing statements of Boyer's counsel at the impeachment hearing indicate that he was aware that this issue was before the Board at that hearing. Boyer's attorney did not object at any point that an issue not included in the impeachment articles was being tried improperly at the impeachment hearing. "Where issues are tried without objection or by consent, such issues shall be deemed to have been properly before the agency." Sec. 536.063(3)

The allegation of error by admitting hearsay instead of the best evidence has already been addressed by this Court in our discussion of Boyer's second point on appeal. The city clerk's testimony was properly admitted. Point denied.

In his seventh point on appeal, Boyer states that the Board erred when it found him guilty of any of the charges in the impeachment articles as there was no just cause to impeach him as mayor of City. As noted previously, this point also fails to comply with Rule 84.04(d)(2).

■ We will consider this point *ex gratia*. The "for cause" standard for the impeachment of the mayor of a third-class city, which is governed by Sec. 77.340, uses the same language "for cause shown," as Sec. 79.240, which governs the impeachment of a mayor of a fourth-class city. This Court has construed the language "for cause shown" to mean " 'a legally sufficient ground or reason,' the determination of which necessarily depends upon the facts of the particular case." *Fitzgerald v. City of Maryland Heights*, 796 S.W.2d 52, 56 (Mo.App.1990) (quoting *State ex rel. Hall v. Wolf*, 710 S.W.2d 302, 303 (Mo.App.1986)). The appropriate meaning "should not only 'speci[ally] [relate] to and [affect] the administration of [his] office, and . . . be . . . of a substantial nature directly affecting the rights and interests of the public,' it should also be limited to objective reasons which reasonable people, regardless of their political persuasion, could agree would render any mayor's performance ineffective. Such

---

9. Article 1 of the Articles states that "On or about February 9, 1999, the Honorable John L. Boyer, Mayor of the City of Potosi, Missouri, did illegally and unlawfully remove Donald Cooksey from the office of chief of police of the City of Potosi, Missouri, without good cause shown, and without first giving Donald Cooksey the right to appear and be heard before the Board of Aldermen of the City of Potosi, Missouri, sitting as a board of impeachment prior to his removal from office in violation of Sec. 79.240 RSMo (1998)." This is actually the statutory requirement for removing an elective official. A mayor can remove an appointive official with the consent of a majority of the elected members of the board of aldermen. Sec. 79.240.

cause would include acts of misfeasance, the improper performance of some act which may lawfully be done, malfeasance, the commission of some act wholly beyond actor's authority, and nonfeasance, the failure to perform a required duty." *Fitzgerald,* 796 S.W.2d at 56–57 (quoting *McCallister v. Priest,* 422 S.W.2d 650, 657 (Mo. banc 1968), *citing State ex rel. Powell v. Wallace,* 718 S.W.2d 545, 549 (Mo.App. 1986) and *Wolf,* 710 S.W.2d at 304–05).

◼◼◼ The Board found that based on the evidence presented to it at the impeachment hearing of March 29, 1999 that Boyer had removed Cooksey as chief of police of City in violation of Sec. 79.240, had certified and had permitted false claims for wages against City, had made a false report of misconduct by Cooksey, and had disclosed confidential medical records. Each of the acts in impeachment articles 1, 6, 7, 10 and 11 that the Board determined that Boyer had committed would constitute malfeasance, which is defined as: "A wrongful or unlawful act; esp., wrongdoing or misconduct by a public official." *Black's Law Dictionary* 968 (7th ed.1999). Malfeasance meets the "for cause shown" standard for the impeachment and removal of an elected official. *Fitzgerald,* 796 S.W.2d at 56–57, *citing Wallace,* 718 S.W.2d at 549 and *Wolf,* 710 S.W.2d at 304–05. When a mayor is impeached for a number of independent acts, any one of the allegations which meets the "for cause shown" standard, if supported by competent and substantial evidence, is sufficient to sustain the removal of the mayor. *Fitzgerald,* 796 S.W.2d at 61; *see also Wallace,* 718 S.W.2d at 549 and *Wolf,* 710 S.W.2d at 304. We have thoroughly reviewed the record and conclude there was competent and substantial evidence to support the Board's determination that Boyer had committed these acts, except for the disclosure of confidential medical records, impeachment article 11. We will address each of the impeachment articles in turn.

◼◼◼ Impeachment article 1 alleged that Boyer illegally and unlawfully terminated Cooksey from his position as chief of police of City on or about February 9, 1999, in violation of Sec. 79.240. The evidence presented on this charge was that Boyer had removed Cooksey without the consent of a majority of all of the elected alderman. Exhibit 1, a letter from Boyer to Cooksey dated February 9, 1999 stated that Boyer had appointed James Belfield as chief of police and that Cooksey was terminated. Cooksey testified that he had received such a letter from Boyer that he had been terminated. The city clerk testified that she was not aware of any vote taken by the council to approve the removal of Cooksey as chief of police, and that there were no minutes or records that indicated that such a vote had ever been taken. The city clerk testified further that after Boyer appointed Belfield as chief of police, the motion to approve the temporary appointment of Belfield until April at the February 22, 1999 meeting died for lack of a second. Payments were made to Belfield on March 1 and March 8, 1999, apparently authorized by Boyer, but not by ordinance, and were approved by the council after the checks had already been issued. City attorney David Orzell testified that he had provided an informal opinion letter to the Board and Boyer about the removal of Cooksey in which he advised both the Board and Boyer that a vote of the Board was necessary to remove an appointed officer of the City. Orzell further stated that he was not aware of any such vote to remove Cooksey prior to the impeachment hearing, and restated that he had advised the Board that a vote was necessary to remove Cooksey. There was substantial and competent evidence to

support the Board's determination on impeachment article 1.

 Impeachment article 6 alleged that on or about July 2, 1998, Boyer illegally directed Major Reed to sign and approve city employee "F.F.'s" [10] time and attendance record for the pay period of June 25, 1998 to July 1, 1998, which Boyer knew or should have known was incomplete, unsigned, and false. Major Reed testified that on July 2, 1998, Boyer came to his office with a time sheet that had not been signed by either the employee or the employee's supervisor. Boyer asked Major Reed to approve the time sheet, and Major Reed replied that he could not do so because the employee had not worked on the days indicated on the time sheet. Major Reed further testified that he had worked on the days in question June 25 and June 26, and to his knowledge the employee in question, "F.F." had not worked those days, and that he would have been working the same shift as Major Reed. Major Reed provided this information to Boyer, and told Boyer that he would not sign the time sheet because "F.F." did not work the indicated hours. Reed testified that Boyer replied, "I'll handle it myself" and "stormed down the hall." The city clerk identified Exhibit 9, the time and attendance sheet of "F.F." and stated that she recognized Boyer's signature on the line for the supervisor, and that the time sheet indicated that on June 25 and June 26 "F.F." worked eight hours each day. Exhibit 10, the dispatcher's daily report for June 25 and 26, 1998, does show that "F" was the dispatcher for the period from 2200 to 0700. But the dispatcher's daily report for June 26, 1998 indicates a different dispatcher, and does not indicate that "F.F." was on duty that day. The report contains a notation that at 5:02 that "KATHY CALLED FRANK WONT BE IN DOCTOR SAID TO STAY OFF." There was no other evidence showing that "F.F." worked on these days. The Board could have reasonably believed Major Reed's testimony that he had told Boyer that employee had not worked on those days, that there was a problem with the hours claimed on "F.F.'s" time sheet, and that he would not sign it. The Board could have reasonably disbelieved the portion of the dispatcher's report which showed that "F.F." worked on one of the two days in question. There was substantial and competent evidence to support the Board's determination on impeachment article 6.

Impeachment article 7 alleged that on or about July 2, 1998, Boyer illegally signed and approved the time and attendance record for "F.F." for the June 25, 1998 to July 1, 1998 pay period, which Boyer knew or should have known was incomplete, unsigned by the employee, and was false, and that Boyer illegally authorized the payment of compensation for "F.F." for days when he was not at work and for which he did not have paid sick leave. The evidence on this charge was the same as that for impeachment article 6. There was substantial and competent evidence to support the Board's determination on this impeachment article.

 Impeachment article 10 alleged that on or about July 31, 1998, Boyer made a false report to the Board concerning an incident with Cooksey on or about June 4, 1998, where Boyer knowingly and falsely accused Cooksey of acting in a threatening manner by placing his hand on his service revolver. The city clerk testified that she was at the July 31, 1998 council meeting, and that Boyer reported the incident of June 4, 1998, and stated that Cooksey had placed his hand on his revolver. The city

10. On the court's own motion, we use only the employee's initials.

clerk further testified that she had witnessed the June 4, 1998 incident between Boyer and Cooksey, and that on that day Cooksey was not wearing a revolver, and that based on her observations of the incident, Boyer's statement that Cooksey had touched his revolver was false. There was substantial and competent evidence to support the Board's determination on impeachment article 10.

██ Impeachment article 11 charged Boyer with having disclosed Cooksey's confidential medical and employment records to the general public "[o]n or about July 13, 1998." The Board found that "[o]n July 13, 1998, the Hon. John L. Boyer did intentionally disclose and disseminate to the general public confidential medical and employment information regarding Donald Cooksey in an open meeting of the Board of Aldermen . . . ." The evidence introduced on impeachment article 11 at the impeachment hearing consisted of an excerpt from the city code book, the minutes of the July 27, 1998 council meeting and the testimony of the city clerk. The July 27, 1998 minutes stated that:

> Alderman W[illia]m M[.] Gum questioned Chief Cooksey's letter from the council. The minutes stated a letter from a doctor of the council's choosing, that the letter sent to the chief stated a doctor of Chief Cooksey's choosing, the city's choice, choosing or the city's choice. Mayor L. Boyer stated the council would have to abide by the letter.

Potosi's attorney asked the city clerk if the discussion quoted above was initiated by Boyer, to which the city clerk replied, "Okay. A couple, little further on that, yes." The evidence introduced concerning the July 27, 1998 council meeting does not relate to either the charge in impeachment article 11 or the findings of fact on that article. Further, neither the July 27 minutes nor the city clerk's testimony provide substantial evidence that Boyer disclosed confidential medical and employment records to the general public on July 13, 1998 or any other date. An examination of the minutes of the July 13 council meeting fails to indicate that Boyer took any action regarding Cooksey's records. The minutes state only that "[a]fter much discussion, Alderman Wayne Malugen made motion to demand a release for medical information on police personnel in question (police chief), to a qualified physician of our choosing, and give us an evaluation." As mayor, Boyer did not vote on that motion. Based on the record, there was not substantial and competent evidence to support the Board's determination that Boyer had committed the acts alleged in impeachment article 11.

As noted earlier, the valid removal of Boyer from the office of mayor of City does not require that he be guilty of all impeachment offenses charged. Because there was substantial evidence to support the Board's determination that Boyer was guilty of the offenses in articles 1, 6, 7 and 10, this constituted "good cause" for the impeachment and removal of Boyer from office.

We affirm the judgment of the trial court affirming the Board's determination as to impeachment articles 1, 6, 7 and 10 and as to the impeachment and removal of Boyer as mayor, and reverse the judgment of the trial court and the Board's determination as to impeachment article 11.

PAUL J. SIMON and MARY R. RUSSELL, JJ., concur.