William E. COLYER, D.O., Appellant,

v.

**STATE BOARD OF REGISTRATION FOR The HEALING ARTS,** Respondent.

No. WD 68335.

Missouri Court of Appeals, Western District.

June 17, 2008.

Nicole Sublett, Jefferson City, for appellant.

William Sherman Vanderpool, III, and Sharie Hahn, Jefferson City, for respondent.

RONALD R. HOLLIGER, Judge.

William E. Colyer, D.O. ("Dr. Colyer") appeals the revocation of his medical license by the State Board of Registration for the Healing Arts ("Board"). Dr. Colyer raises three points on appeal claiming that the Board erred in revoking his medical license for incompetency. He claims that the overwhelming weight of the evidence shows that his failing score on the Special Purpose Examination ("SPEX") is not a valid indicator of his ability to practice medicine, that he was denied due process and equal protection in several respects, that there was no lawful basis for the Board's initiation of competency proceedings, and that the Board was not authorized by statute or regulation to use the SPEX as the sole measure of physician competency. We reverse and remand with directions.

**Factual and Procedural Background**

Dr. Colyer is an osteopathic physician who has been licensed in Missouri for approximately thirty years. He opened his own clinic in Dixon, Missouri, in 1983, where he continues to work as a family practitioner. He works between twenty-four and thirty hours each week, seeing up to fifteen patients per day.

The Board initiated a competency proceeding against Dr. Colyer by sending him notice and a subpoena requiring him to attend a Probable Cause Hearing. The hearing was to review and investigate Dr. Colyer's ability to "practice as a physician ... with reasonable skill and safety to patients" pursuant to section 334.100.2(25) [1]. Dr. Colyer attended the hearing with counsel. At the hearing, Board members assessed his general medical knowledge by posing hypothetical scenarios and asking Dr. Colyer how he would diagnose and treat patients with various ailments.

On November 22, 2005, the Board issued its Order Finding Probable Cause questioning Dr. Colyer's competency to practice medicine because he failed to demonstrate minimally adequate knowledge of the following: (1) evaluation of a patient for Lyme's Disease, (2) the definition, evaluation, confirmation, and proper pharma-

---

1. All statutes referenced are Missouri Revised Statutes (2000).

cology in the management of essential hypertension, (3) the use of Hemoglobin A1C in the monitoring of diabetes, (4) testing for a patient who is taking Coumadin, including the use of the International Normalization Ratio levels and *Prothrombin* time, (5) the existence of any local pain centers, and (6) diagnosis and treatment of migraine headaches.

Pursuant to section 334.100.2(25)(a), the Board required Dr. Colyer to submit to a reexamination. The Board allowed Dr. Colyer two attempts in six months to take the SPEX and receive a passing score of 75. The SPEX is a multiple-choice, standardized test provided by the Federation of State Medical Boards (FSMB). The SPEX is administered by Thomson Prometric in a computerized format. Dr. Colyer applied for and received an extension to complete the exam. He took the exam on June 22, 2006, and obtained a score of 70. Due to his failing score, the Board issued a notice compelling Dr. Colyer to attend a Final Disciplinary Hearing.

Dr. Colyer attended the hearing and was represented by counsel. The Board entered his failing SPEX score into evidence. Dr. Colyer submitted several letters from patients commending his work and service to the community. His daughter and office manager, Melissa Martinez ("Martinez"), testified that Dr. Colyer was unfamiliar with computers and that she had requested an accommodation for him to take the exam in a pencil-and-paper format. Thomson Prometric denied the request. The FSMB told her that special accommodations could be made if they were approved by the Board. Two days before the scheduled exam, Martinez wrote to the Board requesting special accommodations. The record does not include the Board's response. After receiving his failing grade, Dr. Colyer was permitted to take the test

again if he wished. The record contains no indication that he desired or asked to retake the test.

Dr. Colyer next called Professor Stephen Osterlind ("Dr. Osterlind") as an expert witness in psychometrics. Dr. Osterlind is a Professor of Measurement and Statistics at the University of Missouri in Columbia. He testified that the focus of his discipline is to reduce measurement error on standardized tests. He stated that a test taker's unfamiliarity with computers could cause anxiety, resulting in a score that measures variables other than one's knowledge of the subject matter. On cross-examination, Dr. Osterlind stated that his testimony was not about the SPEX specifically since he had no familiarity with how that exam was developed. He was also unfamiliar with the FSMB, the entity that created the exam. Dr. Osterlind then testified that the FSMB could have taken all variables he had mentioned into account when creating and scoring the SPEX. Dr. Colyer did not request to take any other exam to prove his medical competence nor did he offer affirmative evidence of his competence.

The Board issued its Findings of Facts, Conclusions of Law, and Order revoking Dr. Colyer's license. The circuit court affirmed the Board's decision. This appeal follows.

## Standard of Review

 On appeal, this Court reviews the decision of the agency, rather than that of the trial court, to determine whether the agency action:

(1) [i]s in violation of constitutional provisions; (2)[i]s in excess of the statutory authority or jurisdiction of the agency; (3)[i]s unsupported by competent and substantial evidence upon the whole record; (4)[i]s, for any other reason, unauthorized by law; (5)[i]s made upon un-

lawful procedure or without a fair trial; (6)[i]s arbitrary, capricious or unreasonable; (7)[i]nvolves an abuse of discretion.

Section 536.140.2; *State Bd. of Registration for the Healing Arts v. McDonagh,* 123 S.W.3d 146, 152 (Mo. banc 2003). The evidence is viewed in the light most favorable to the agency's factual findings. *Tendai v. State Bd. of Registration for the Healing Arts,* 161 S.W.3d 358, 365 (Mo. banc 2005). This court gives no deference to the agency's conclusions of law, which are reviewed *de novo. Id.*

## Discussion

### Statutory Procedure

The procedure for the Board's determination of general medical incompetency has been outlined by the Supreme Court in *Artman v. State Bd. of Registration for the Healing Arts,* 918 S.W.2d 247 (Mo. banc 1996). Section 334.100.2 governs physician discipline and begins:

> The board may cause a complaint to be filed with the administrative hearing commission as provided by chapter 621, RSMo, against any holder of any certificate of registration or authority, permit or license required by this chapter ... for any one or any combination of the following causes:

Following several specific causes, subdivision (25) lists the general cause of incompetency: "Being unable to practice as a physician and surgeon ... with reasonable skill and safety to patients by reasons of medical or osteopathic incompetency." Section 334.100.2(25). General medical competency proceedings are specifically exempted from the Administrative Hearing Commission's jurisdiction and are conducted by the Board. Section 334.100.2(25)(e).

Before disciplining a doctor under subdivision (25), the Board must hold a hearing and issue a finding of probable cause to question the doctor's competency. Section 334.100.2(25)(a). Neither the statute nor the Board's regulations set standards for convening a probable cause hearing or for the type of evidence required. *Artman,* 918 S.W.2d at 250. When the Board finds probable cause, it shall require a physician to be reexamined to establish his or her competency to practice medicine. Section 334.100.2(25)(a). Reexamination is to be "conducted in accordance with rules adopted for this purpose by the board." *Id.* However, the Board has never promulgated a rule governing reexamination. *See* 20 CSR 2150–2.015; *Artman,* 918 S.W.2d at 250.

When the Board requires a doctor to undergo reexamination, it must send written notice. Section 334.100.2(25)(d). The physician's failure to submit to the examination constitutes an admission of the allegations and the Board may enter a final order "without the presentation of evidence, unless the failure was due to circumstances beyond the physician's control." *Id.* Presumably, if the physician is found competent based on the examination standards, no further action would be taken to discipline his or her license. *State ex rel. Walker v. Mo. Bd. of Registration for the Healing Arts,* 926 S.W.2d 148, 150 (Mo.App. E.D.1996).

The statute does not outline a clear procedure to follow when the physician fails the examination. *Id.* The statute merely states that the Board may suspend or revoke a physician's license, among other disciplinary measures, "when the board finds any person unqualified because of any of the grounds set forth in this subdivision." Section 334.100.2(25)(f) and 334.100.4. Although the statute does not require a contested hearing before the Board suspends or revokes a physician's

license, *Artman* has held that due process is satisfied, "[s]o long as before a license is revoked, the physician has a meaningful hearing with notice and an effective opportunity to defend[.]" *Artman*, 918 S.W.2d at 251. "The primary purpose of the statutes authorizing the Board to discipline a physician's license is to safeguard the public health and welfare." *Mo. Bd. of Registration for the Healing Arts v. Levine*, 808 S.W.2d 440, 442 (Mo.App. W.D.1991).

## Points on Appeal

In his first point on appeal, Dr. Colyer claims that the Board erred in revoking his license because it was not supported by substantial evidence in the record, constitutes an abuse of agency discretion, and is arbitrary, capricious, and unreasonable in that the overwhelming weight of the evidence shows that Dr. Colyer's score of 70 on the SPEX is not a valid indicator of his ability to practice medicine with reasonable skill and safety.

Dr. Colyer's second point on appeal claims that the Board erred in revoking his license by violating his constitutional rights to due process and equal protection, in that the Board presented no lawful basis for initiating competency proceedings against him and considered information outside the scope of the hearings.

The third claim raised in Dr. Colyer's appeal is that the Board erred because his license revocation was ultra vires, made upon unlawful procedure, and contrary to law, in that neither section 334.100.2(25) nor 20 CSR 2150–2.015 authorize the Board to utilize the SPEX as the sole measure of physician competency.

We address the broader issues of constitutionality of the Board's procedures before considering the more specific and limited issues concerning the SPEX exam.

## CONSTITUTIONAL CLAIMS

### Due Process and the Probable Cause Procedure

Dr. Colyer raises constitutional claims that he was denied both due process and equal protection. Specifically, he claims that (1) the Board offered no lawful basis for initiating the competency proceeding; i.e., calling for a probable cause hearing and (2) that the Board considered matters outside the record in determining probable cause, namely, complaints that he was given no notice of or opportunity to defend against. Both parties point to the Supreme Court's decision in *Artman* to support their polar positions. In doing so, both Dr. Colyer and the Board have at least in part misread *Artman*.

■ The due process clauses under the United States and Missouri constitutions prohibit the taking of life, liberty, or property without due process of law. U.S. Const. amend. XIV, sec. 1; Mo. Const. art. I, sec. 10. Dr. Colyer had a property interest in his license to practice medicine, which was protected by both procedural and substantive due process as prescribed in Section 334.100. *Larocca v. State Bd. of Registration for the Healing Arts*, 897 S.W.2d 37, 42 (Mo.App. E.D.1995). Thus, he was entitled to due process before the Board could revoke his license. *Id.*

■ Procedural due process requires the opportunity to be heard at a meaningful time and in a meaningful manner. *Moore v. Bd. of Educ. of Fulton Pub. Sch. No. 58*, 836 S.W.2d 943, 947 (Mo. banc 1992). These rights will not be the same in every instance; rather, " 'due process is flexible and calls for such procedural protections as the particular situation demands.' " *Jamison v. State Dep't of Soc. Servs., Div. of Family Servs.*, 218 S.W.3d 399, 406 (Mo. banc 2007) (quoting *Morris-*

*sey v.Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).

Procedural due process encompasses a number of rights, from the basic entitlement to notice and a hearing, to the specifics of what constitutes adequate notice and what manner of hearing is proper in the circumstances. *See Moore*, 836 S.W.2d at 947. Each of these must be considered in its own right, in the context of the particular legislative act and, in this case, administrative procedure. *Jamison*, 218 S.W.3d at 406. The Board contends that *Artman* holds that no notice of specific complaints is constitutionally required under the due process clause. That assertion is overbroad. *Artman* did specifically state that the "withholding of information about specific complaints and potential areas of inquiry did not violate the due process clause." *Artman*, 918 S.W.2d at 251. But that holding was in response to an argument that due process entitled the physician to notice of any complaints before the probable cause hearing. Dr. Colyer points to other language in *Artman*, stating that evidence at the probable cause hearing of four complaints was minimally sufficient to provide sufficient evidence for the Board to question the doctor's competency. *Id.* at 251.

Although, at first blush, *Artman* may seem internally inconsistent, that impression diminishes when looking at the precise argument that the Court was addressing. At that point in the analysis, the Court was answering the question of whether section 334.100.2(25) was unconstitutional *as applied* to Dr. Artman because it provided no guidance "to channel the Board's discretion and ensure enforcement in a nonarbitrary, nondiscriminatory fashion." *Id.* The holding now relied upon by Dr. Colyer followed a finding that the statute was not unconstitutional on its face, which then proceeded to an "as ap-

plied" analysis. Most importantly, Dr. Colyer fails to recognize that this was a substantive due process analysis.

Rather, Dr. Colyer objects to the absence of information supporting the Board's initial decision to have a probable cause hearing as a violation of equal protection. The Board correctly points out that *Artman* rejects an equal protection claim that the doctor's rights were violated by requiring attendance at an investigatory hearing (the probable cause hearing) or a reexamination. *Id.* at 252. Dr. Colyer also raises, however, a due process argument concerning the alleged reliance upon matters outside the record at the probable cause hearing. We believe Dr. Colyer once again misreads *Artman*. We do not read this portion of *Artman* to hold that due process requires that proof of sufficient evidence to call for a probable cause hearing be determined as a contested fact. The probable cause hearing itself is investigatory and not adjudicatory. Probable cause itself does not involve a weighing of evidence. What we believe *Artman* holds in this context is that proof of only four complaints a decade old was not proof for the due process "as applied" test that the Board acted in an arbitrary and discriminatory manner in initiating its investigation. This interpretation is buttressed by *Artman's* citation to *Rose v. State Bd. of Registration for the Healing Arts*, 397 S.W.2d 570, 575 (Mo.1965). As in *Artman*, Dr. Colyer has not demonstrated that the Board acted arbitrarily *as to him* in requiring a probable cause hearing.

### Due Process and the Final Disciplinary Hearing

Dr. Colyer's next constitutional argument is, however, of more concern. Specifically, he contends that he was deprived of due process by the Board's reliance at the final disciplinary hearing upon

a qualitative evaluation of answers he gave to hypothetical patient situations presented by board members at the probable cause hearing. Fundamental aspects of due process include the ability to cross-examine witnesses and to present evidence. *See Goldberg v. Kelly*, 397 U.S. 254, 268–69, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Whether due process requires an opportunity for cross-examination at a particular stage of an administrative process depends on the particular property or personal interest involved and the stage of the administrative process. *Jamison v. State, Department of Social Services*, 218 S.W.3d 399, 405, 412 (Mo.2007). The procedure used by the Board at the probable cause hearing did not allow (and was not required to allow) cross-examination of the Board members who asked questions of Dr. Colyer (and on whose expertise the finding of probable cause relied) and did not include the opportunity for him to present evidence on his behalf. And the probable cause hearing did not require those procedural rights under *Artman* because it was investigatory and *not adjudicatory*. *Artman*, 918 S.W.2d at 251. At the final hearing, however, the Board relied upon and specifically found, as a basis for its finding of incompetency, the inadequacies in the answers Dr. Colyer gave at the probable cause hearing. This, we believe, it could not do without affording Dr. Colyer minimal due process rights including an opportunity to cross-examine a witness explaining those inadequacies and a meaningful opportunity to present evidence contesting any perceived deficiencies in his responses at the probable cause hearing.[2]

Our inquiry does not stop, however, with the finding that the Board erred in considering the evidence at the probable cause hearing. We do not reverse an agency or administrative hearing commission decision for the erroneous consideration of evidence if the decision is otherwise supported by substantial and competent evidence. *Andrews v. Mo. Real Estate Comm'n*, 849 S.W.2d 241, 245 (Mo.App. W.D.1993). As we understand, however, Dr. Colyer does not contend that the SPEX exam is itself incompetent evidence but, rather, that its use as the sole basis for determining his competency is ultra vires, made upon unlawful procedure, and contrary to law. These arguments are addressed in Point III of his brief.

## The Board's Use of the SPEX Exam

The Board responds that *Artman* held that use of the SPEX exam was not ultra vires or otherwise unlawful because of the lack of a regulation authorizing its use. It also points to 20 CSR 2150–2.150(1)(B), which authorizes the use of the SPEX (among other tests) in deciding whether to reinstate a revoked physician's license. But the Board misses the point of Dr. Colyer's argument. He acknowledges that its mere use is not unlawful but argues, instead, that the Board was not authorized to use the reexam as the *sole* measure of general medical competency. Unfortunately, the Board does not directly respond to this argument, being content to argue that it relied upon something else, i.e., the probable cause hearing evidence, which we held incompetent above.

**2.** The Board in one sentence of its brief says that Dr. Colyer had the right to cross-examine the probable cause evidence at the final hearing and to present evidence to controvert it. It cites to no reference in the record or statute or regulation providing that right. The notice of the final hearing did state that the Doctor had the right to call witnesses and present evidence. We are left to speculate how Dr. Colyer can cross-examine the probable cause hearing witnesses (Board members) who are also making the final disciplinary decision.

■ The Board does make passage of certain tests a requirement of initial permanent licensure. 20 CSR 2150–2.005(1). Although we have not had demonstrated to us any reason why the Board could not make passage of the SPEX exam an absolute requirement in the present context, we are reluctant to so hold absent any finding by the Board in the record in this case. There is, likewise, no regulation concerning the SPEX exam in this context. The Code of State Regulations makes the SPEX exam a requirement for reinstatement after revocation. 20 CSR 2150–2.150(1)(B). However, it specifically states that passage of the test is only a minimum requirement for reinstatement. While we do not deal here with an express minimum requirement, that regulation does not support the conclusion that SPEX results are intended by the Board to be the sole basis for revocation under section 334.100.2(25). Nor are the Board's actions in this case consistent with such a conclusion. The notice of final hearing sent to Dr. Colyer indicated that "all parties have the right to present evidence and/or witnesses relating to the issue of your practicing as a physician with reasonable competency." In sum, we are not convinced that the Board itself intends for the SPEX exam results to be the sole criteria.

■ This uncertainty is buttressed by the Board's failure to make any finding on a hotly contested issue at the final hearing. Dr. Colyer introduced evidence that the writers and publishers of the test did not intend, and recommended, that the test not be used as the sole criteria. He strongly argued against such use of the SPEX exam. In order for us to conduct a proper judicial review, an administrative agency is required to make sufficient findings of fact and conclusions of law about contested issues. *State ex rel. Noranda Aluminum, Inc. v. Pub. Serv. Comm'n*, 24 S.W.3d 243, 246 (Mo.App. W.D.2000).

We, therefore, reverse and remand this matter to the circuit court with directions to remand the matter to the Board. After such remand, the Board should make additional findings concerning the use of the SPEX exam and may, in its discretion, reopen the evidentiary hearing for further consideration of the exam and also the receipt of additional evidence if the Board determines that the SPEX exam is not the sole criteria. We have held that the evidence at the probable cause hearing was not appropriately used because of the lack of opportunity for cross-examination. That deficiency can easily be cured by presenting those questions and answers through an expert that can be cross-examined.

VICTOR C. HOWARD, Chief Judge, and PAUL M. SPINDEN, Judge, concur.