Krishnarao V. REDNAM,
M.D., Respondent,

v.

STATE BOARD OF REGISTRATION
FOR The HEALING ARTS,
Appellant.

No. WD 71290.

Missouri Court of Appeals,
Western District.

March 30, 2010.

Application for Transfer Denied
Aug. 31, 2010.

Glenn E. Bradford, Lindsey E. Bates, Robert G. Groves, co-counsels, for Appellant.

Harvey M. Tettlebaum, Thomas D. Vaughn, co-counsel, Jefferson City, MO, for Respondent.

Before KAREN KING MITCHELL, P.J., JAMES EDWARD WELSH, and MARK D. PFEIFFER, JJ.

JAMES EDWARD WELSH, Judge.

Three months after Krishnarao V. Rednam, M.D., was convicted of a felony, the Board of Registration for the Healing Arts entered an order automatically revoking his physician's license and barring him from applying for reinstatement for seven years. Rednam appealed to the circuit court. The circuit court affirmed the revocation of Rednam's license but reversed the Board's determination that he could not apply for reinstatement for seven years. The Board appeals. We reverse the circuit court's judgment and remand with directions.

The record established that Rednam was licensed by the Board as a physician and surgeon on June 13, 1983. He is trained as an ophthalmologist with a specialty of retinal surgery. Between 1983 and January 2008, he was employed by the St. Louis Eye Clinic. In the nearly twenty-five years that he practiced, Rednam did not have any disciplinary action taken against his license.

On April 11, 2008, Rednam pleaded guilty in the United States District Court for the Eastern District of Missouri to one count of the felony of obstruction of a criminal investigation of a health care offense. The court sentenced him to a term of six months imprisonment and two years of supervised release, including four months of home confinement. The court also ordered him to pay a fine of $30,000.

The basis for Rednam's conviction was that, from approximately April 2007 through May 2007, Rednam removed or destroyed files in his care that were necessary for the government's investigation into criminal health care offenses at the Eye Clinic. At the time, the government was investigating a reimbursement issue involving Rednam's charging and dispensing the drugs Avastin, Macugen, and Lucentis, which are injected into the eye to treat macular degeneration. According to Rednam's attorney, Rednam administered Macugen to some patients but billed for Lucentis, which is significantly more expensive.[1]

In June 2008, the Board sent Rednam notice of an automatic revocation hearing. The notice informed him that a hearing was scheduled before the Board on July 18, 2008, to determine whether cause existed for the automatic revocation of his medical license. Included with the notice was a copy of the Board's complaint, which sought automatic revocation of Rednam's license under section 334.103.1, RSMo Cum.Supp.2009, based upon his April 2008 felony conviction. Section 334.103.1 provides, in pertinent part:

A license issued under this chapter by the Missouri State Board of Registration for the Healing Arts shall be automatically revoked at such time as the final trial proceedings are concluded whereby a licensee has been adjudicated and found guilty, or has entered a plea of

---

1. The issue was described in more detail in letters that Rednam sent to his patients in September 2007. In the letters, he informed certain patients that they "may have received" Avastin, even though they had been advised of and consented to receiving Macugen. The record indicated that Macugen is more expensive than Avastin. Rednam advised other patients that they "may have received" a mixture of Macugen with Lucentis, which is an off-label use of the drugs. Rednam offered these letters to his patients as exhibits in his hearing before the Board.

guilty or nolo contendere, in a felony criminal prosecution under the laws of the state of Missouri, the laws of any other state, or the laws of the United States of America for any offense reasonably related to the qualifications, functions or duties of their profession, or for any felony offense, an essential element of which is fraud, dishonesty or an act of violence, or for any felony offense involving moral turpitude, whether or not sentence is imposed[.]

Before the July 18, 2008 hearing, the Board and Rednam stipulated to the following facts. Rednam admittedly made a critical mistake in judgment by preventing, obstructing, misleading, and delaying communication of material records and information to criminal investigators. On his own initiative and at his own expense, however, Rednam prepared a list of all of the patients involved and gave this list to the United States government, allowing the government to conduct its investigation more efficiently and thoroughly. He made calculations of his inventory, drugs used, and patient charges. His findings corroborated the government's knowledge of the nature and conduct of the offense, which ultimately facilitated the resolution of the case. In doing so, Rednam provided substantial assistance to the government's investigation, attempting to reverse his earlier attempts to obstruct. He has consistently demonstrated that he is willing to directly accept responsibility for his conduct.

The Board and Rednam further stipulated that charity and good works are a lifelong practice of Rednam's. He frequently gave free eye care to those who could not afford his treatment. Rednam's good works were an extrapolation of his retinal specialty. Moreover, because of the rarity of his medical specialty, the Board stipulated that it would be in the public interest to put Rednam in a position where he could resume his good works were the Board to approve his relicensure.

Additionally, the Board and Rednam stipulated that Rednam demonstrated post-offense rehabilitation on his own initiative. He instituted a failsafe system in his practice to ensure that all confusion in the treatment regimen would not happen again. He created a series of checklists and new treatment sheets and a procedural outline of how to treat his patients. Rednam paid full restitution to the United States, Medicare Part C carriers, and Medicare beneficiaries financially impacted by his actions. Specifically, he paid $304,335 to the United States, $65,000 to various Medicare Part C carriers, and approximately $16,000 to Medicare beneficiaries.[2] He also completed several professional certifications in an effort to continue to acquire knowledge that would allow him to better aid his patients.

During the July 18, 2008 hearing before the Board, the Board offered into evidence Rednam's judgment and conviction. Rednam's counsel[3] informed the Board that Rednam was not contesting the validity of

---

**2.** Redman offered his settlement agreement with the United States as an exhibit in his hearing before the Board. The agreement shows that, in exchange for the government's agreeing to release Rednam "from any civil or administrative monetary claim it has or may have under the False Claims Act, 31 U.S.C. §§ 3729–3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a–7a; the Program Fraud Civil Remedies Act, 31

§§ 3801–3812; the common law theories of payment by mistake, unjust enrichment, and fraud," Rednam agreed to pay full restitution to the United States, Medicare Part C carriers, and Medicare beneficiaries.

**3.** Rednam was serving his six-month term of imprisonment at the time of the hearing and, therefore, was not present.

his conviction or the automatic revocation of his license under section 334.103.1. Rather, Rednam's counsel argued that the only issue Rednam was asking the Board to consider was not to order "any mandatory period of revocation." Rednam's counsel was referring to section 334.100.5, RSMo Cum.Supp.2009, which says, "In any order of revocation, the Board may provide that the person may not apply for reinstatement of the person's license for a period of time ranging from two to seven years following the date of the order of revocation." Thus, Rednam's counsel asked the Board to refrain from exercising its discretion to impose a time period before which Rednam could apply for reinstatement of his license.

In support of this request, Rednam's counsel offered the parties' stipulated facts and 104 letters of support from patients, doctors, and friends. Additionally, his counsel offered exhibits evidencing Rednam's skill as an ophthalmologist; his charitable efforts to provide medical services for little or no cost to the poor, including substantial contributions to medical clinics in India serving the poor; and certificates of his completed medical training. The Board had stipulated to these exhibits and did not object to their admission during the hearing.

The Board subsequently issued its findings of fact, conclusions of law, and order revoking Rednam's license. The Board found that, "[o]n April 11, 2008, Dr. Rednam was convicted upon his plea of guilty to the federal crime of obstructing a criminal investigation of a health care offense." The Board further found that "[o]bstructing a criminal investigation of a health care offense is reasonably related to the qualifications, functions or duties of the profession; an essential element is fraud or dishonesty; and· [it] involves moral turpitude." Based upon these findings, the Board concluded that it "ha[d] no choice in these circumstances" but to revoke Rednam's license pursuant to section 334.103.1. The Board further ordered that Rednam "shall not apply for reinstatement for a period of seven years from the date of this order."

Rednam petitioned the circuit court for judicial review. On review, the circuit court affirmed the order automatically revoking Rednam's license. The court reversed the Board's determination that he could not apply for reinstatement for seven years, however. The court found that the Board's decision contained "no findings of fact or conclusions of law concerning the substantial evidence of rehabilitation that was admitted without objection." Additionally, the court found that the Board's order contained no discussion of the interests it considered in exercising its discretion under section 334.100.5.

The circuit court concluded that the Board's order barring Rednam from applying for reinstatement for seven years was not supported by the Board's findings of fact and conclusions of law. The court further concluded that it could review the record and remand the case to the Board with directions to modify its decision. After reviewing the record, the court ruled that "[t]he interests of the public health and welfare are best served by simply revoking [Rednam]'s license at this time and allowing the Board to evaluate future applications for reinstatement as [Rednam] may submit." The Board appeals.

On appeal from the circuit court's review of an agency's decision, we review the agency's actions and not those of the circuit court. *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009). As in the proceedings below, Rednam does not dispute on appeal the propriety of the Board's order automatically revoking his medical

license. Rather, he takes issue with the Board's decision to bar him from applying for reinstatement for seven years. Rednam argues in his first point that, in imposing a seven-year bar on his applying for reinstatement, the Board failed to consider the substantial and uncontradicted evidence of his rehabilitation. In his second point, Rednam contends that the Board's order is legally insufficient under section 536.090, RSMo 2000, because the Board failed to set forth the evidence it believed or rejected in deciding to impose the seven-year bar.

■ Because it is dispositive of the appeal, we will address only Rednam's second point concerning the sufficiency of the Board's findings of fact. Section 536.090 requires that an administrative agency's findings of fact be stated separately from its conclusions of law and "include a concise statement of the findings on which the agency bases its order." "An agency's determination of findings is not a separate function from its decision in a case; agency findings of fact and conclusions of law are an essential *part* of and the basis for an agency decision." *Mo. Bd. of Pharmacy v. Tadrus*, 926 S.W.2d 132, 136 (Mo. App.1996). When reviewing an agency's decision, we are not permitted to infer findings in accordance with the agency's ultimate decision. *Id.* at 135.

■ The purpose of requiring findings of fact and conclusions of law is to allow a court to review the agency's decision on the record to determine whether that decision violated section 536.140.2, RSMo Cum. Supp.2009.[4] *Schwartz v. City of St. Louis*, 274 S.W.3d 509, 513 (Mo.App.2008). For us to be able to conduct a proper judicial review, the agency "is required to make sufficient findings of fact and conclusions of law about contested issues." *Colyer v. State Bd. of Registration for Healing Arts*, 257 S.W.3d 139, 147 (Mo.App.2008).

■ In this case, the Board made sufficient findings of fact on the uncontested issue of the automatic revocation of Rednam's license. It made no findings of fact, however, concerning the only contested issue at the hearing, which was whether to impose a time bar on his applying for reinstatement and, if so, the length of such a bar. The Board's findings of fact do not state its basis for deciding that Rednam should be prohibited from applying for reinstatement for seven years. Indeed, during oral argument, the Board conceded that there is "no question" that its order contains no specific findings of fact related to the bar on Rednam's applying for reinstatement. While we might infer from the order and the record before us that the Board determined that, despite the stipulated evidence of Rednam's rehabilitation, the seriousness of Rednam's transgressions warranted the seven-year bar, we are not permitted to make such an inference. *Tadrus*, 926 S.W.2d at 135.

■ Although the circuit court concluded, as we have, that the Board's order did not state the findings on which the Board based its decision regarding Rednam's ability to apply for reinstatement, the court did not remand the case to the Board to make such findings. Instead, the court reversed the Board's decision and remanded the case to the Board to modify its decision by not placing any restriction on Rednam's ability to apply for reinstate-

---

4. Section 536.140.2 provides that judicial review of an agency's decision extends to a determination of whether the decision is unconstitutional, exceeds the agency's statutory authority or jurisdiction, is not supported by competent and substantial evidence, is unauthorized by law, is made on unlawful procedure or without a fair trial, is arbitrary, capricious, or unreasonable, or involves an abuse of discretion.

ment. This was error. When an agency fails to make sufficient findings of fact and conclusions of law to explain the basis for its decision, "judicial review is inappropriate." *Schwartz*, 274 S.W.3d at 514. In such circumstances, the proper course of action is to remand the case to the agency to make sufficient findings. *Colyer*, 257 S.W.3d at 147; *Complete Auto Body & Repair, Inc. v. St. Louis County*, 232 S.W.3d 722, 726 (Mo.App.2007).

We, therefore, reverse the circuit court's judgment and remand this case to the circuit court with directions to remand the matter to the Board. Upon such remand, the Board should state the finding or findings on which it based its decision to prohibit Rednam from applying for reinstatement of his license for seven years in such a manner and in sufficient detail to allow for judicial review.[5]

All concur.

---

**5.** Rednam filed a motion in this court for attorney's fees and expenses on appeal pursuant to section 536.087, RSMo 2000. Because the underlying merits of the case were not finally determined pursuant to this appeal, a decision on the fee application is not ripe for adjudication at this time. § 536.087.4; *Lincoln County Stone Co. v. Koenig*, 21 S.W.3d 142, 148–49 (Mo.App.2000). We, therefore, dismiss the motion without prejudice.