Michael J. SCHUMER, Respondent,

v.

Jerry LEE, Director, Department
of Public Safety, Appellant.

No. WD 75917.

Missouri Court of Appeals,
Western District.

July 30, 2013.

David F. Barrett, Jefferson City, MO, for Respondent.

Chris Koster, Attorney General, Daniel K. Jacob and Daniel Follett, Assistant Attorneys General, Jefferson City, MO, for Appellant.

Before Division III: LISA WHITE HARDWICK, Presiding Judge, and MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

MARK D. PFEIFFER, Judge.

■ Jerry Lee, Director of the Department of Public Safety ("Director"), appeals the judgment of the Circuit Court of Cole County, Missouri ("trial court"), which reversed the Director's decision revoking the peace officer license of Respondent Michael Schumer ("Schumer"). On appeal, we review the administrative agency's decision rather than the judgment of the trial court; however, we affirm or reverse the trial court's judgment based upon such review of the administrative decision. *Bird v. Mo. Bd. of Architects*, 259 S.W.3d 516, 520 n. 7 (Mo. banc 2008). Accordingly, because we conclude that the administrative agency's decision revoking Schumer's peace officer license was both lawful and factually supported, we reverse the judgment of the trial court.

**Factual and Procedural Background**

In August of 2008, Schumer was serving as a reserve police officer with the Velda City, Missouri, Police Department. On the evening of August 20, 2008, Schumer was on patrol with his partner, Officer Pastorias. Schumer heard on the police radio a call for assistance by Officer Dwayne Paul ("Officer Paul"). Officer Paul had stopped a car driven by Brandon Ellis ("Ellis") for failing to stop at a stop sign. When Officer Paul initially approached Ellis, Ellis gave Officer Paul his name, social security number, and proof of insurance, but Ellis did not have his driver's license with him. Ellis's demeanor was calm. Schumer and Pastorias arrived to assist Officer Paul, who asked Schumer to remain with Ellis while Officer Paul returned to his patrol car, which was immediately behind Ellis's car, to retrieve his flashlight.

As Officer Paul was returning to Ellis's car, he could hear Schumer yelling at Ellis to put his hands on the steering wheel, and when Ellis did not immediately comply, Schumer reached in through the open window and grabbed Ellis by the throat to compel his compliance with Schumer's command. Schumer then opened Ellis's car door, and without first simply asking Ellis to exit his vehicle peacefully, Schumer grabbed the back of Ellis's neck and pulled him out. Schumer then took Ellis to the back of Ellis's car and tried to push Ellis's head down onto the trunk of the car. Schumer finally handcuffed Ellis for this minor traffic violation, and Ellis was placed in the back of Officer Paul's patrol

car. Schumer and Pastorias then searched Ellis's vehicle and, finding nothing significant, left the scene.

Officer Paul personally observed that Ellis was visibly shaken and upset with the way Schumer had treated him. Officer Paul ultimately gave Ellis a traffic citation for failing to stop at the stop sign and released him.

Ellis filed a complaint about Schumer's treatment of him with the Velda City Police Department. At approximately this same time, Schumer resigned his position. Schumer subsequently obtained another reserve officer position with the City of Kinloch but had been suspended from that position (for making racial slurs and choking a suspect) prior to his administrative hearing.

At the administrative hearing, Officer Paul testified, as did the Chief of the Velda City Police Department, Daniel Paulino. The Director also called Sergeant Kirk Davis as an expert and questioned him about the appropriate use of force by an officer in Schumer's situation under the circumstances that were present on August 20, 2008. Schumer testified on his own behalf, and the Chief of the City of Kinloch's police department was called in rebuttal.

Commissioner Karen Winn of the Administrative Hearing Commission ("the Commission"), who conducted the administrative hearing, issued a decision that found Schumer "subject to discipline for committing a criminal offense while on active duty that involved a reckless disregard for the safety of a person."[1] A "Director's hearing" was subsequently conducted by the Director's designate, Deputy Director Andrea Spillars. Deputy Director Spillars then issued a decision adopting the findings of fact of the Commission and determining that Schumer's peace officer license would be "immediately and permanently revoked."[2] Schumer appealed to the Circuit Court of Cole County, which issued a judgment reversing the Director's permanent revocation of Schumer's license. The Director appeals.

## Standard of Review

"In an appeal following judicial review of an agency's administrative action, [an appellate court] reviews the decision of the agency, not the circuit court." *TAP Pharm. Prods., Inc. v. State Bd. of Pharmacy*, 238 S.W.3d 140, 141 (Mo. banc 2007). Pursuant to section 536.140.2, review involves a determination of whether the agency's action: is in violation of constitutional provisions; is in excess of the statutory authority of the agency; is unsupported by competent and substantial evidence on the record; is otherwise unauthorized by law; is made upon unlawful procedure or without a fair trial; is arbitrary, capricious, or unreasonable; or involves an abuse of discretion. *See id.* at 142.

## Analysis

Due to the procedural posture of this appeal (review of the agency decision),

---

1. Section 590.080.1 states that the Director shall have cause to discipline any peace officer licensee who . . . (2)[h]as committed any criminal offense, whether or not a charge has been filed; [or] (3)[h]as committed any act while on active duty or under color of law that involves moral turpitude or a reckless disregard for the safety of the public or any person.

2. Where, as in this case, the Director agrees with the Administrative Hearing Commission's decision and enters an order accordingly, the action of the Commission and the Director's order are treated as a single decision. § 621.145.

Schumer—as the aggrieved party—submitted his appellate brief first and raised seven points on appeal: (1) and (2) that the disciplinary statute, § 590.080, and the process employed by the Director in applying the statute, are unconstitutional; (3) that the Director erred in revoking his license, as the basis for the revocation was his act of committing the misdemeanor of assault, and the statute of limitations for assault expired before the disciplinary procedures were commenced; (4) that the Director erred in revoking Schumer's license for having committed assault when there was no evidence that the victim of the alleged assault was in apprehension of immediate physical injury; (5) that the Director erred in revoking Schumer's license on the basis that he displayed a reckless disregard for another's safety because there was no evidence of the applicable standard of care and how Schumer deviated from the standard of care; (6) that the Director erred in failing to make findings of fact and conclusions of law in support of his permanent revocation of Schumer's license; and (7) that the Director erred in permitting "Deputy Director Spillars to make the decision in his case in violation of section 536.140." We review each point in turn.

### I and II

Schumer's first two points challenge the constitutionality of section 590.080. Following a long line of precedent on this topic in Missouri courts, we conclude that the administrative decision was not a violation of Schumer's constitutional rights of due process.

Section 590.080 allows the Director to discipline any peace officer licensee who has, *inter alia*, "committed any criminal offense, whether or not a criminal charge has been filed." Schumer complains that allowing an administrative body, rather than a court, to determine whether a criminal offense has been committed "violates the Separation of Powers Doctrine, in that the power to declare conduct criminal (as opposed to merely illegal) belongs uniquely to the judiciary." He also claims that since the "criminal charges" were not brought by a public prosecutor, and "culpability was not required to be proven beyond a reasonable doubt," the process was unconstitutional.

The courts of this state have routinely upheld the Commission's ability to determine whether a crime had been committed such that a professional license should be disciplined; this is so, as the statute indicates, whether or not a criminal charge was filed and, if so, whether the licensee had been found guilty of the crime, had pled guilty, or had been acquitted. *See, e.g., Younge v. State Bd. of Registration for the Healing Arts,* 451 S.W.2d 346 (Mo. 1969); *Dir., Dep't of Pub. Safety v. Bishop,* 297 S.W.3d 96 (Mo.App. W.D.2009); *State Bd. of Nursing v. Berry,* 32 S.W.3d 638 (Mo.App. W.D.2000); *Wolff v. State Bd. of Chiropractic Exam'rs,* 588 S.W.2d 4 (Mo. App. E.D.1979).[3]

---

**3.** These cases illustrate the distinct and independent nature of *criminal* prosecution versus *civil* administrative license disciplinary proceedings. In Point III, Schumer argues that a *procedural* defense to criminal prosecution—the criminal statute of limitations—should serve as a bar to civil administrative license discipline proceedings. Yet, section 590.080 specifically states that "whether or not a criminal charge has been filed" is irrelevant to the administrative proceeding; and, the cited precedent makes it clear that even *substantive* acquittals in criminal prosecutions are not relevant to the civil license discipline administrative proceedings in which the administrative tribunal is separately determining whether a crime was committed. As is discussed *infra*, the reason for the mutual exclusivity of these forums on this topic is rooted in the purpose of each proceeding.

■ Because the purposes of criminal prosecutions differ from administrative license discipline procedures, no constitutional principles are implicated. *See Younge,* 451 S.W.2d at 349 (holding that a statute providing for discipline of professional licenses was " 'for the protection of the public' . . . and . . . was not an imposition of punishment," and therefore the constitutional protections afforded criminal defendants did not apply). In fact, even the "prosecution" of some ordinance violations, which have been called "quasi-criminal" in nature, *City of Joplin v. Marston,* 346 S.W.3d 340, 341 (Mo.App. S.D.2011), may be handled administratively. In *City of Springfield v. Belt,* 307 S.W.3d 649, 652 n. 8 (Mo. banc 2010), which is cited by Schumer, the Supreme Court states, "Where authorized by statute, municipalities do have some power to adjudicate certain ordinance violations administratively." *Belt* simply concluded that the particular ordinance violation alleged in that case had not been authorized by statute to be adjudicated administratively. In contrast, the legislature has specifically provided in section 590.080 that peace officer licenses may be disciplined when the licensee has committed a criminal offense, even if no criminal prosecution has been initiated. The only logical conclusion is that the determination of whether the crime has been committed, *for this purpose,*[4] may be made administratively, and the constitutional protections afforded criminal defendants are not extended to a professional licensee subject to discipline.

The burden of proof in a civil case is different from the burden of proof in a criminal case because the purpose of each proceeding is different. Unlike a criminal case where the state charges an individual with a criminal violation, the proof of which jeopardizes life or liberty, the licensing process and the ability to discipline a [licensee] to practice . . . is an administrative mechanism delegated by the General Assembly to the [administrative agency] to protect the health and welfare of the state's citizens. . . .

To prove a breach of [the criminal statute] the [agency] was compelled to prove . . . the elements of [the crime], not to the standard required for conviction in a criminal prosecution but to the standard of a civil matter, "preponderance of the evidence."

*Berry,* 32 S.W.3d at 642.

Points I and II are denied.

### III

■ Schumer's third point on appeal is that the Director erred in revoking his peace officer license because the disciplinary procedure was not initiated until after the one-year *criminal* statute of limitations for assault, § 556.036.2(2), expired. Schumer reasons that since the basis for the Director's decision to revoke his license was that Schumer was found to have committed the crime of assault, the *criminal* statute of limitations should be used to bar the *administrative* proceedings.[5]

---

4. Schumer was not charged and prosecuted for assault. The Director has neither the authority to charge an individual with a crime nor to seek the imposition of criminal punishment. Had Schumer been charged with a crime by the State and thus had his liberty placed at stake, he would have been afforded the constitutional protections provided to any criminal defendant.

5. This argument also ignores the alternative basis the Director found to justify revocation of Schumer's peace officer license—that Schumer, while on active duty or under color of law, committed an act that involved reckless disregard of a person's (Ellis's) safety.

■ While Schumer is correct that the *criminal* statute of limitations would serve to bar any *criminal* prosecution for his actions on August 20, 2008, Schumer is *not* being charged *criminally*, and thus the *criminal* statute of limitations does not apply to the present *civil* administrative proceeding. Further, the expiration of a statute of limitations corresponding to a criminal offense does not establish that a crime was not committed.[6] A criminal statute of limitations is simply a *procedural* affirmative defense that a *criminal* defendant may raise to prevent his *criminal* prosecution. *Dorris v. State,* 360 S.W.3d 260, 268 (Mo. banc 2012); *Sauvain v. Acceptance Indem. Ins. Co.,* 339 S.W.3d 555, 560 n. 6 (Mo.App. W.D.2011) (" 'Missouri . . . considers statutes of limitations issues procedural. . . .' "). It does nothing to prevent the Director from proving the *substantive* elements of the crime under the *civil* burden of proof, which is what is required to subject the license to administrative discipline. *See Berry,* 32 S.W.3d at 642. Thus, the *criminal* statute of limitations bears no relevance to the present *civil* administrative proceedings.

Point III is denied.

## IV

■ Schumer's fourth point on appeal is that the Director erred in determining that Schumer had committed an assault on Ellis by placing him in apprehension of immediate physical injury because there was no evidence that Ellis was in apprehension of immediate physical injury. A person commits assault in the third degree if he "purposely places another person in apprehension of immediate physical injury." § 565.070.1(3).

Because Ellis did not testify at Schumer's administrative hearing and because Ellis's formal complaint against Schumer was not admitted during the hearing, Schumer claims that there is no evidence that Ellis was in any apprehension of immediate physical injury, making the Director's conclusion that Schumer committed assault as defined in section 565.070.1(3) unsupported by substantial evidence. We disagree. .

Numerous appellate opinions have concluded that there was sufficient evidence to support a *criminal* conviction for assault in the third degree listing circumstantial evidence *not* including the assault victim's testimony. In *State v. Vaughn,* this court found sufficient evidence to support a criminal conviction for third-degree assault exists where a man approached his girlfriend in the shower, "poked" her in the chest with a kitchen knife, and made threatening statements to her. 940 S.W.2d 60, 61 (Mo.App. W.D.1997). Likewise, in *State v. Snell,* 845 S.W.2d 96, 97 (Mo.App. E.D.1993), the court concluded that where the defendant drove his car toward the victim while he walked on the shoulder of the road, forcing the victim to move out of the way and coming close enough to the victim that the defendant could hit him with a stick, there was sufficient evidence to support the defendant's criminal conviction of assault in the third degree.

Here, in this civil administrative proceeding, Commissioner Winn's decision found that Schumer's act of grabbing Ellis by the throat placed Ellis in apprehension of immediate physical injury. This finding is supported by substantial evidence on the record. Officer Paul's testimony establishes that Schumer yelled at Ellis repeatedly to place his hands on the steering wheel. When Ellis did not immediately

---

6.  On the contrary, the defense may be waived, and the criminal defendant may still be prosecuted and punished. *See Dorris v. State,* 360 S.W.3d 260, 269 (Mo. banc 2012).

comply, Schumer grabbed Ellis by the throat to force compliance with his command.[7] Then, in this routine traffic stop, Schumer grabbed Ellis by the back of his neck, forcefully removed Ellis from his car, and tried to push Ellis's head down onto the trunk of the car, before ultimately handcuffing Ellis. During Schumer's effort to push Ellis's head down, Ellis put his hands up to shield himself from Schumer's use of force.[8] Officer Paul noted that Ellis was visibly upset. In fact, Ellis was so upset by Schumer's actions that he filed a complaint against Schumer with the police department. This is substantial evidence supporting the Director's conclusion that Ellis was, in fact, in apprehension of immediate physical injury due to Schumer's actions on August 20, 2008.

Point IV is denied.

7. At oral argument, Schumer's counsel argued that Schumer's act of grabbing Ellis by the throat could not have placed him in apprehension of immediate physical injury because Schumer was behind Ellis, and therefore Ellis would not have "seen it coming." Without commenting on the legal soundness of this argument, we do note that this factual assertion, not made in Schumer's appellate brief, is directly refuted by Schumer's own hearing testimony. At the hearing, Schumer testified that during Ellis's traffic stop, Schumer "was on the driver's side by the—by the front mirror face-to-face with him."

8. At oral argument, Schumer's counsel argued that Commissioner Winn found this conduct to have been "privileged." There is no such finding in the Commission's decision. Although there is a finding that "[i]n a traffic stop situation, it is appropriate for a peace officer to ask a driver to get out of the car[, and the] driver does not have the right to refuse such a request," in this case it is undisputed that Schumer never requested that Ellis step out of his car before grabbing him by the throat, forcefully removing him from the car, and pushing his head down toward the trunk of the car.

## V

■ Schumer's fifth point on appeal is that the Director erred in revoking his peace officer license on the basis that Schumer had "committed any act while on active duty or under color of law that involves . . . a reckless disregard for the safety of the public or any person," § 590.080.1(3), because, Schumer claims, there was no testimony as to the standard of care or how Schumer deviated from the standard of care.[9] We disagree. The Director's expert set forth the standard of care regarding the appropriate use of force and opined how Schumer's actions fell outside of that standard.

The Director's expert, Sergeant Kirk Davis of the Missouri Highway Patrol, has trained prospective law enforcement officers for years on defensive tactics and the appropriate use of force.[10] Sergeant Davis

9. Schumer essentially argues that "recklessness" must be subject to a "standard of care" established by expert witness testimony. To support his assertion, Schumer cites cases involving medical negligence, cases that typically involve a scientific aspect, which would be outside the knowledge of most lay factfinders. Even if medical negligence cases are sufficiently analogous to cases in which law enforcement officers are accused of crimes, we need not decide whether expert testimony was required in this administrative proceeding, because the Director did, in fact, produce such expert testimony.

10. Although Davis trains prospective state highway patrolmen and not municipal police officers, a fact belabored by Schumer at oral argument, Schumer never offered evidence to show that the standards and procedures taught to prospective municipal police officers regarding the appropriate use of force would be any different. Moreover, any question as to the source or basis of an expert's opinion would merely affect the weight that the fact-finder gives the opinion. *Glaize Creek Sewer Dist. of Jefferson County v. Gorham*, 335 S.W.3d 590, 594 (Mo.App. E.D.2011). Schumer's counsel cross-examined Sergeant Davis at length on this matter, and we may presume that the Commissioner took it into

testified that three criteria are considered in determining the appropriate level of force an officer should use in a particular situation: (1) what immediate threat was posed by the subject, which involves consideration of the severity of the crime or the incident with which the officer is dealing; (2) whether the subject offered resistance; and (3) whether, under the totality of the circumstances, another reasonable and experienced officer would find the officer's actions reasonable. Davis concluded, after having considered all of the available statements and depositions recounting the events of August 20, 2008, including Schumer's statement, that Ellis had not posed any immediate threat to Schumer. Davis considered the "severity of the crime," in this case, a traffic stop, and opined that Schumer's use of force on Ellis was, under the circumstances, excessive. Davis stated that grabbing someone by the throat through an open car window would be a tactic or technique that would be reserved "only for a deadly force type situation" because it would have "a high propensity to cause serious physical injury," and that it was not appropriate for a traffic stop, even if the driver needed to be removed from the vehicle. This is substantial evidence supporting the Director's determination that Schumer acted with reckless disregard for Ellis's safety during the August 20, 2008 traffic stop.

■ Next, Schumer argues that it is inconsistent for the Director to find that Schumer acted both purposefully or knowingly in assaulting Ellis, the first basis for the finding that discipline was appropriate, and recklessly in disregard of Ellis's safety, the alternate basis. Again, we disagree. Schumer urges this court to borrow the definition of "reckless" provided in the criminal law, which declares that a person acts "recklessly" when he "con-

account in assessing the weight of the expert

sciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4. We see nothing inconsistent about Schumer's actions *purposefully* placing Ellis in *apprehension* of immediate physical injury and in creating a "substantial and unjustifiable risk" that *actual* serious physical injury would, in fact, occur.

Point V is denied.

## VI

■ Schumer's sixth point on appeal is that the Director erred in revoking his peace officer license without having first made findings of fact and conclusions of law to support the permanent revocation. The Director *adopted the findings of fact and conclusions of law issued by the Administrative Hearing Commission,* which heard extensive evidence over the course of two days. After the Commission issued its decision finding that there was cause to discipline Schumer's peace officer license, the Director held another hearing allowing Schumer to present additional evidence and to make arguments on his own behalf as to what, if any, action should be taken. It then issued its letter, concluding that, after reviewing all of the evidence, Schumer's license should be permanently revoked.

After the Commission has determined that cause for discipline exists, the Director has broad discretion to determine the form of discipline that will be imposed. § 590.080.3. The statute does not expressly require the Director to make *additional* findings of fact and conclusions of law to justify the form of discipline that he has determined is appropriate in each case.

testimony.

Schumer relies upon *Rednam v. State Board of Registration for the Healing Arts*, 316 S.W.3d 357, 361 (Mo.App. W.D. 2010). The facts of *Rednam* are markedly different from the facts in this case, however. In *Rednam*, this court noted that the applicable administrative board did not state why it chose the maximum allowable discipline on the professional license involved despite "the substantial evidence of rehabilitation that was admitted without objection." *Id.* at 360. This evidence showed that the licensee had implemented "a failsafe system in his practice to ensure that all confusion in the treatment regimen would not happen again. He created a series of checklists and new treatment sheets and a procedural outline of how to treat his patients." *Id.* at 359. He had also paid full restitution and had assisted law enforcement's investigative efforts. *Id.* The court noted the "104 letters of support from patients, doctors, and friends ...; exhibits evidencing [the licensee's] skill as an ophthalmologist; his charitable efforts to provide medical services for little or no cost to the poor ...; and certificates of his completed medical training." *Id.* at 360.

This case stands in sharp contrast to *Rednam*. Here, not only did the evidence presented fail to show any rehabilitative efforts on Schumer's part, but it indicated just the opposite. The Chief of Police of the City of Kinloch, who was Schumer's supervisor at his subsequent job, testified that he had suspended Schumer for making racial slurs and choking a suspect. Furthermore, although Schumer states in his brief that the hearing before the Commission had "caused him to rethink his decisions on the night in question" and that he had submitted himself for additional training, Schumer testified at the Director's hearing that he still believed he had not done anything wrong on the evening of August 20, 2008. Under these circumstances, we find nothing in the rec-

ord to indicate that the Director's disciplinary decision in this case was arbitrary or capricious, or an abuse of discretion. *See* § 536.140.2.

Point VI is denied.

## VII

■ Schumer's final claim of error is that the Director erred in permitting Deputy Director Spillars to make the decision as to what disciplinary action would be taken with respect to his license as Deputy Director Spillars was not a proper designee for the Director's authority.

Section 590.080.3 states:

> Upon a finding by the administrative hearing commission that cause to discipline exists, the director shall, within thirty days, hold a hearing to determine the form of discipline to be imposed and thereafter shall probate, suspend, or permanently revoke the license at issue. If the licensee fails to appear at the director's hearing, this shall constitute a waiver of the right to such hearing.

"Director," however, for the purposes of section 590.080.3, is defined as "the director of the Missouri department of public safety *or his or her designated agent or representative.*" § 590.010(2) (emphasis added).

Despite the plain language of section 590.010(2), Schumer first claims that the purported designation of Deputy Director Spillars was not in writing and that there was, therefore, no evidence that the designation in fact occurred. Nothing in section 590.010 requires the Director's designation to be in writing, or even that it be made part of the record in any particular case, so this argument is without merit.

Schumer next claims, despite the plain language of the statute, that the Director was without authority to designate Deputy

Director Spillars as his agent or representative in conducting the Director's hearing and issuing the disciplinary ruling, because these were not "ministerial" duties. Schumer cites *Jackson v. Board of Directors of the School District of Kansas City*, 9 S.W.3d 68 (Mo.App. W.D.2000), and *State ex rel. Rogers v. Board of Police Commissioners of Kansas City*, 995 S.W.2d 1 (Mo.App. W.D.1999). Both *Jackson* and *Rogers* distinguish themselves from *Brown Group, Inc. v. Administrative Hearing Commission*, 649 S.W.2d 874 (Mo. banc 1983), by pointing out that the administrative boards that improperly delegated their authority to conduct hearings were not in the course of fulfilling ministerial duties. *Jackson*, 9 S.W.3d at 71; *Rogers*, 995 S.W.2d at 4. However, a subsequent decision of this court, *Cade v. Department of Social Services*, 41 S.W.3d 31, 40 (Mo.App. W.D. 2001), states that a conclusion that *Jackson* and *Rogers* hold that *only* ministerial acts may be delegated "is not a correct interpretation of these cases."

It is only when the power of an administrative body or official to delegate authority must be *implied* that it becomes necessary to examine whether the delegated action is ministerial or discretionary or whether there is a reasonable basis for the implication of the authority. *See Jackson*, 9 S.W.3d at 71. Section 590.010(2) *expressly* allows the Director to designate an agent or representative, and the statute does not expressly limit that ability to ministerial actions. Such was not the case in either *Jackson* or *Rogers*. In both of those cases, the administrative hearings were required to be heard by "the board." *Jackson*, 9 S.W.3d at 70; *Rogers*, 995 S.W.2d at 3. In both cases, the applicable statutory provisions required "the board" to have a quorum to conduct all business, and in neither case was the board expressly allowed to designate an agent or representative. *Jackson*, 9 S.W.3d at 71; *Rogers*, 995 S.W.2d at 3. Therefore, the cases on which Schumer relies are inapposite.

Finally, in both *Jackson* and *Rogers*, the party entitled to the hearing *objected* to the hearing being conducted by the designee. In this case, Schumer, who was represented by counsel, participated in the Director's hearing knowing that Spillars was a Deputy Director and, therefore, the Director's designee. Schumer did not object to Spillars conducting the hearing. Schumer, by his failure to object, acquiesced in the Director's designation of Spillars as his representative and has waived this issue on appeal. *See Hunsucker v. Fischer*, 221 S.W.3d 433, 435 (Mo.App. W.D.2006); *Tate v. Dep't of Soc. Servs.*, 18 S.W.3d 3, 7 (Mo.App. E.D.2000) (holding that under the invited error rule, a party may not complain on appeal of an alleged error in which the party acquiesced).

Point VII is denied.

## Conclusion

Finding no error in the Director's decision revoking Schumer's peace officer license, we reverse the judgment of the circuit court and affirm the Director's decision revoking Schumer's peace officer license.

LISA WHITE HARDWICK, Presiding Judge, and CYNTHIA L. MARTIN, Judge, concur.